[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11176
_____

D.C. Docket No. 1:15-cv-01922-WSD

TENET HEALTHSYSTEM GB, INC.,
d.b.a. Atlanta Medical Center
d.b.a. Atlanta Medical Center South Campus,
NORTH FULTON MEDICAL CENTER, INC.,
d.b.a. North Fulton Regional Hospital,
TENET HEALTHSYSTEM SPALDING, INC.,
d.b.a. Spalding Regional Medical Center,
TENET HEALTHSYSTEM SGH, INC.,
d.b.a. Sylvan Grove Hospital,
COASTAL CAROLINA MEDICAL CENTER, INC.,
d.b.a. Coastal Carolina Hospital,
EAST COOPER COMMUNITY HOSPITAL INC.,
d.b.a. East Cooper Medical Center,
HILTON HEAD HEALTH SYSTEM, LP.,
d.b.a. Hilton Head Hospital,
AMISUB OF SOUTH CAROLINA, I NC.,
d.b.a. Piedmont Medical Center,
TENET HEALTHSYSTEM DI, I NC.,
d.b.a. Des Peres Hospital,
TENET HEALTHSYSTEM SL, INC.,
d.b.a. Saint Louis University Hospital,
AMISUB (SFH), INC.,
d.b.a. Saint Francis Hospital,

Plaintiffs - Appellants,

versus

CARE IMPROVEMENT PLUS SOUTH
CENTRAL INSURANCE COMPANY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 18, 2017)

Before MARCUS, DUBINA, and WALKER,[*] Circuit Judges.

WALKER, Circuit Judge:

Plaintiffs-appellants are eleven hospitals (the "Plaintiff Hospitals" or "the Hospitals") who provided medical care to Medicare Part C enrollees after being authorized to do so by the defendant-appellee, Care Improvement Plus ("CIP"). BB 4-5. CIP is a Medicare Advantage Organization ("MAO"), which is a private insurance company that manages the Medicare benefits of Part C enrollees. CIP initially reimbursed the Hospitals in full, but several years later it recouped a substantial portion of these payments through offsets, claiming they were not authorized under Part C of the Medicare Act (the "Act"), 42 U.S.C. §§ 1395w-21

_____

[*] Honorable John M. Walker, Jr., United States Circuit Judge for the Second Circuit, sitting by designation.

2

to 1395w-29. The Hospitals then filed this lawsuit to recover the recoupments. The district court dismissed the claims for lack of jurisdiction, holding that the Hospitals failed to exhaust their administrative remedies before bringing suit in federal court.

This case requires us to determine whether under the Medicare Act the Plaintiff Hospitals must exhaust their administrative remedies before bringing suit for underpayment by the MAO that manages enrollee benefits. To decide this case it is necessary to understand the relationship of the parties within the statutory context of the pertinent provisions of the Medicare Act.

I.

Under Medicare Part C, Pub. L. No. 105-33, § 4001, 111 Stat. 251 (1997) (codified as amended at  42 U.S.C. §§ 1395w–21 to 1395w–29), MAOs, which are private sector insurers, contract with the Centers for Medicare and Medicaid Services ("CMS"), the branch of the United States Department of Health and Human Services ("HHS") responsible for administering Medicare, to provide medical treatment to Medicare enrollees. CMS pays MAOs a pre-negotiated lump sum for one year (known as a "capitated payment") for each enrollee that the MAO agrees to cover. In exchange, the MAO assumes all of the financial risk for treating

3

that enrollee. *See* 42 U.S.C. §§ 1395w–24-25; *see also* RB 4; BB 5. If the cost of treatment exceeds the amount that the MAO was paid, the federal government is not liable for the cost overruns—the MAO bears the loss. Appx. F at \*2. Under Medicare Part C, MAOs provide the same benefits that an enrollee would receive through the traditional, government-administered, fee-for-service programs under Medicare Parts A and B, as well as additional benefits. Appx. F at \*2.

As the organizations responsible for administering benefits, MAOs make determinations as to whether a certain type of treatment is covered under the Medicare regulations, and if so at what rate an enrollee may be reimbursed. 42 U.S.C. § 1395w-22(g)(1)(A). When a dispute with an enrollee arises on one of these issues, it is adjudicated according to CMS regulations. The MAO's initial decision regarding coverage is classified as an "organization determination," which the Medicare Act defines as a decision "regarding whether an individual enrolled with the plan of the organization under this part is entitled to receive a health service under this section and the amount (if any) that the individual is required to pay with respect to such service." § 1395w-22(g)(1)(A). Organization determinations also include decisions by an MAO to not cover, reimburse, or provide for a treatment that "the enrollee believes" is covered by Medicare.[1]

---

[1] The Medicare regulations define organization determinations as:

HHS's regulations define potential parties to an "organization determination" as an "enrollee," the "assignee of an enrollee," the "legal representative of a deceased enrollee's estate," or "[a]ny other provider or entity (other than the MA organization) determined to have an appealable interest in the proceeding." 42 C.F.R. § 422.574.

---

(b) Actions that are organization determinations. An organization determination is any determination made by an MA organization with respect to any of the following:

> (1) Payment for temporarily out of the area renal dialysis services, emergency services, post-stabilization care, or urgently needed services.
>
> (2) Payment for any other health services furnished by a provider other than the MA organization that the enrollee believes—
>
> > (i) Are covered under Medicare; or
> >
> > (ii) If not covered under Medicare, should have been furnished, arranged for, or reimbursed by the MA organization.
>
> (3) The MA organization's refusal to provide or pay for services, in whole or in part, including the type or level of services, that the enrollee believes should be furnished or arranged for by the MA organization.
>
> (4) Reduction, or premature discontinuation, of a previously authorized ongoing course of treatment.
>
> (5) Failure of the MA organization to approve, furnish, arrange for, or provide payment for health care services in a timely manner, or to provide the enrollee with timely notice of an adverse determination, such that a delay would adversely affect the health of the enrollee.

42 C.F.R. § 422.566.

If any one of the foregoing parties wishes to challenge any aspect of an organization determination, that party must exhaust its administrative remedies by following a specific procedure for administrative appeal prescribed by the Medicare Act and its implementing regulations. *See* 42 U.S.C. § 1395w–22(g); 42 C.F.R. §§ 422.560–422.622.  A party may only bring suit in an Article III court to challenge an organization determination once all of the administrative remedies provided by the Act and its regulations have been exhausted. *See* 42 U.S.C. § 405(g) (authorizing judicial review of "any final decision of the Commissioner of Social Security"); 42 U.S.C. 1395w-22(g)(5) (making 42 U.S.C. § 405(g) applicable to appeals of benefits denials under Medicare Part C); *see also Heckler v. Ringer*, 466 U.S. 602, 617 (1984) (noting that administrative exhaustion is a "prerequisite to jurisdiction" under 42 U.S.C. § 405(g)). This is the sole pathway through which a party can obtain judicial review of any claim "arising under" the Medicare Act. 42 U.S.C. § 405(h); 42 U.S.C. § 1395ii (applying 42 U.S.C. § 405(h) to Medicare Part C); *see also Ringer*, 466 U.S. at 614-15 (noting that 42 U.S.C. § 405(h) and 42 U.S.C. § 1395ii, provide that § 405(g), "to the exclusion of" Congress's provision for federal question jurisdiction under 28 U.S.C. § 1331, "is the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act" (alteration in original)).

6

MAOs pay third-party healthcare providers to treat enrollees. This can be done in one of two ways. One option is for the MAO to enter into an express, written contract with a third-party provider, whereby it agrees to pay certain rates for certain categories of treatments. *See* 42 U.S.C. § 1395w-25(b)(4). The Medicare Act permits these types of contracts, and provides very few limitations on how they can be drafted. *See, e.g.*, 42 C.F.R. § 422.520(b) (requiring contracts between MAOs and providers to contain a prompt payment provision). The third-party providers that are parties to these agreements are called "contract providers." The second option is for a healthcare provider that is outside of an MAO's network of contract providers to provide treatment to a Medicare Part C enrollee, and then seek reimbursement from the MAO at a later date. These out-of-network providers are called "noncontract providers."

The Plaintiff Hospitals in this case are noncontract providers. Appx. F at *2-3. According to their Complaint, the Hospitals agreed to provide treatment to certain enrollees that were covered by CIP. Before delivering treatment, the Hospitals contacted CIP and received both authorization to provide the services at issue and a guarantee that CIP would reimburse the Hospitals for the services provided. Appx. F at *3. In exchange for CIP's guarantees, the Hospitals signed waivers holding the enrollees financially harmless for any costs of care and delivered the agreed-upon treatment. Appx. F at *3. The Hospitals were then paid

7

in full for their services. Years later, after conducting an internal audit, CIP determined that it had overpaid the Plaintiff Hospitals for their services. Appx. F at *3.  CIP recouped what it determined to be the amount of its overpayment by offsetting subsequent payments. Appx. F at *3.

Following CIP's recoupment, the Hospitals brought the instant action in the district court for the Northern District of Georgia on May 28, 2015, asserting claims sounding in unjust enrichment and quantum meruit for the recouped payments. BB 7. On February 11, 2016, the district court dismissed the Hospitals' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The district court held that because the Hospitals' claims were inextricably intertwined with the Medicare Act Appx. F at *13, the Hospitals were required to exhaust their administrative remedies before bringing suit in federal court, which they had not done. BB 8-9.

The Hospitals now timely appeal the district court's dismissal.

II

We review a district court's grant of a motion to dismiss *de novo*. *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015). The sole issue on appeal is whether the Hospitals, who are challenging CIP's recoupment decision, are parties to an "organization determination" who are subject to the administrative

8

exhaustion requirements of the Medicare Act. We hold that they are, and therefore affirm the district court's dismissal.

## III

CIP argues that its recoupment decision is an "organization determination" because the Medicare regulations define that term to include a dispute regarding coverage between an MAO and the assignee of a Medicare enrollee's claims.[2] RB 23-26. Because the Hospitals agreed to treat the enrollees and to hold them financially harmless in exchange for a right to recover their reimbursements, CIP argues that the Hospitals are "assignees" of Medicare Part C benefits within the meaning of the regulations and therefore subject to the Medicare Act's exhaustion requirements. We agree.

Under CMS's regulations implementing the Medicare Act's administrative review process, 42 C.F.R. § 422.574, the "parties" to an organization determination include "[t]he enrollee" and the enrollee's "assignee." *Id*. An "assignee" is defined as "a physician or other provider who has furnished a service to the enrollee and formally agrees to waive any right to payment from the enrollee for that service." 42 C.F.R. § 422.574(b). This definition accurately reflects what occurred in the series of transactions leading to the present lawsuit. There was no actual

---

[2] CIP advances a number of other arguments as to why the Hospitals are subject to the Medicare Act's exhaustion requirement. Because we hold that the Hospitals are subject to the requirement by virtue of their status as assignees, we need not address these issues here.

assignment to the hospitals signed by the enrollees, but none is required by 42 C.F.R. § 422.574(b).  The Hospitals agreed to treat certain Medicare enrollees, and agreed to hold those enrollees harmless for any costs incurred in connection with their medical treatments, which is all that is required to effect the assignment. In exchange, the Hospitals assumed the enrollees' right to Medicare reimbursement. The Hospitals then attempted to enforce that right to reimbursement against CIP, just as the enrollees would have done had there been no assignment. Under these circumstances, the Hospitals, who stand in the shoes of the enrollees, assert the enrollees' claims and are subject to the Act's exhaustion requirements.

This result is consistent with the exhaustion requirement's goal of promoting the "efficient functioning" of CMS by allowing the agency to apply its policy "expertise" to disputes arising under the act. *Tataranowicz v. Sullivan*, 959 F.2d 268, 275 (D.C. Cir. 1992). There is no sound reason why reimbursement claims should follow a separate procedural path prior to being adjudicated depending on whether they are asserted by the individual enrollee or by the treatment-providing hospital "assignee." The benefits of the exhaustion requirement are the same in either case. CMS has extensive experience in determining the appropriate Medicare reimbursement rates for different procedures, and billing disputes that require application of the Medicare regulations can be resolved more efficiently if they are submitted to the agency in the first instance.

10

The Hospitals contend that they are not assignees of the enrollees' claims, and make two separate arguments in this regard. First, they argue that they are not assignees because their Complaint does not assert their rights as the assignees of Medicare entitlements, but rather as claimants under state contract law. GB 13. This argument is meritless: the relevant question is not whether the Hospitals define *themselves* as assignees in their Complaint, but whether the Medicare Act and its implementing regulations define them as assignees for the purpose of calculating the reimbursements they are entitled to. The Medicare Act requires certain benefits claims to follow a particular procedural pathway as a matter of law. Whether the Hospitals are asserting such claims as the assignees of enrollees (and are therefore subject to the Act's exhaustion requirements) is a matter of statutory interpretation, and is not determined by reference to the Hospitals' pleadings.

The Hospitals next argue they are not assignees even under the terms of the Act, because they are not seeking to recover reimbursements at the rate that the enrollees would have been reimbursed based on Medicare regulations. Rather, the Hospitals argue that CIP bound itself orally to pay them at a higher rate, regardless of what benefits the enrollees were entitled to. They insist that they are seeking to recover this higher rate of reimbursement through claims sounding in the state law of quasi-contract, which would be adjudicated without reference to the Medicare

11

Act.  Because these claims do not depend on the application of Medicare rates, the Hospitals argue that the administrative exhaustion requirement does not apply.

In support of their argument, the Hospitals cite to two amicus briefs filed by HHS in lawsuits touching on similar claims, in which HHS unequivocally expresses its belief that third-party contract providers (rather than noncontract providers like the Hospitals) are not the assignees of Medicare enrollees' rights to benefits. *See* [Appellant Br. Appx. A at \*6] (arguing that third-party hospitals "are *not* assignees of enrollees' claims") (emphasis added). In those briefs, HHS argued that "[a]n assignee is someone who has been assigned . . . a claim or right that originally belonged to someone else," which is not the case with contract providers. [Appellant Br. Appx. A at \*6] (emphasis omitted).

But the distinction between contract providers and noncontract providers is critical. In billing disputes between MAOs and contract providers, the provider is pursuing a claim for reimbursement that only ever belonged to itself—the claim that arose under the express terms of its contract with the MAO. *Id*. Because these amicus briefs only analyze payment disputes between MAOs and contract providers, they do not address the question that is before the Court in this appeal, and therefore cannot compel a particular interpretation of the Medicare regulations.

Ultimately, the Hospitals' argument turns on whether the Medicare Act allows an MAO to bind itself by oral agreement to pay reimbursement rates to

noncontract providers that are higher than the rates required by the Medicare regulations. If MAOs can be bound by oral agreement, then the Hospitals' theory is that they are not assignees of the enrollees' claims because they are not pressing the enrollees' statutory right to recover benefits, but rather their own right, under state law of quasi-contract, to recover different rates that CIP agreed to. The fatal flaw in this theory is that, under the Medicare regulations, noncontract providers cannot charge more than Medicare reimbursement rates, and thus may not assert higher independently contracted rates. Specifically, CMS has promulgated the following regulation:

> Any provider . . . that does not have in effect a contract establishing payment amounts for services furnished to a beneficiary enrolled in an MA coordinated care plan, an MSA plan, or an MA private fee-for-service plan must accept, as payment in full, the amounts that the provider could collect if the beneficiary were enrolled in original Medicare.

42 C.F.R. § 422.214(a)(1). This regulation prohibits noncontract providers like the Hospitals from seeking reimbursement at rates that are higher than those that could be sought by a Medicare enrollee. The only way a treatment provider can obtain rates different than those available under the Medicare Act is by entering into an express, written contract with an MAO pursuant to 42 C.F.R. § 422.520(b). Thus, the only viable claim the Hospitals can pursue is their right to recover the same reimbursements that the enrollees were entitled to receive under the Medicare Act,

13

and that claim is subject to the Act's administrative exhaustion requirement. To the extent that the Hospitals seek to pursue entirely separate claims sounding in quantum meruit, the text of 42 C.F.R. § 422.214 makes clear that those claims are not permitted under federal law, and we see no point in permitting such a plainly meritless cause of action to proceed past the pleading stage.

The Hospitals contend that the Fifth Circuit's opinion in *RenCare, Ltd. v. Humana Health Plan of Texas, Inc.*, 395 F.3d 555 (5th Cir. 2004), addressed the same question at issue here and reached a contrary result.[3] Not so. *Rencare* addressed claims brought by contract providers against an MAO for breach of the express provisions of a written contract. *Id*. at 557. While the *Rencare* court did hold that contract providers are not assignees of their patients' claims, *id*. at 560, this holding is distinguishable because again the Medicare regulations treat noncontract providers differently than contract providers. As the *Rencare* court noted, the Medicare Act explicitly allows contract providers and MAOs to define the terms of their own agreements without reference to the Medicare regulations.

---

[3] The Hospitals also cite to an unpublished opinion of the Sixth Circuit, *Ohio State Chiropractic Ass'n v. Humana Health Plan Inc.*, 647 F. App'x 619 (6th Cir. 2016), which they claim supports their position. The Hospitals' reliance on this decision is misplaced. *Ohio State Chiropractic* addressed a question not before us: whether an MAO can remove a suit to federal court under 28 U.S.C. § 1442(a) on the grounds that it "act[s] under" the authority of CMS, and that its decisions are therefore subject to federal question jurisdiction. *Id.* at 622-23. While the defendant in that case did argue that noncontract providers under Medicare Part C are required to exhaust their administrative remedies before bringing suit in federal court, the Sixth Circuit declined to address that issue on appeal. *Id*. at 625.

14

*Id*. at 559 (noting that "contracts between [Medicare Advantage] organizations and providers are subject to very few restrictions" under 42 C.F.R. § 422.520(b)). A contract provider's claims are determined entirely by reference to the written contract, not the Medicare Act. The Medicare Act and its implementing regulations make no such exception for equitable claims sounding in quantum meruit or quasi-contract, and indeed expressly forbid noncontract providers from raising such claims. In any event, the *Rencare* court's treatment of the "assignee" argument was confined to a single cursory paragraph at the end of its opinion, *id*. at 560, and it neither quoted nor analyzed the language of 42 C.F.R. § 422.574(b), which we conclude unambiguously defines the noncontract providers in this case as assignees, or 42 C.F.R. § 422.214, which limits noncontract providers to recovering only those payments explicitly authorized by the Medicare Act in exchange for treating enrollees.

We are sympathetic to the concern HHS has expressed in amicus briefs filed in other appeals that "extending an administrative exhaustion requirement to payment disputes purely between an MAO and a provider would improperly tax, and potentially overwhelm, CMS's limited resources." [Appellant Br. Appx. B at *10]. However, the language of the Medicare Act and its implementing regulations is clear that billing disputes between MAOs and noncontract provider assignees qualify as "organization determinations," and are therefore subject to the Act's

15

exhaustion requirement. If this result strains the resources of CMS, any solution must come from Congress or the agency. We are not "authorized to rewrite a statute because [we] might deem its effects susceptible of improvement." *Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000) (quoting *Badaracco v. Comm'r*, 464 U.S. 386, 398 (1984)).

We have considered the Hospitals' remaining arguments, and we find them unavailing. For the foregoing reasons, we AFFIRM the judgment of the district court.

AFFIRMED.