[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11816

_____

D.C. Docket No. 1:17-cv-20039-KMW

MSPA CLAIMS 1, LLC,

Plaintiff-Appellant,

versus

TENET FLORIDA, INC., and
ST. MARY'S MEDICAL CENTER, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 18, 2019)

Before WILSON, JILL PRYOR and THAPAR,[*] Circuit Judges.

THAPAR, Circuit Judge:

The Medicare statute is almost "so incoherent [it] cannot be understood." The Federalist No. 62, at 421 (James Madison) (Jacob E. Cooke ed., 1961); *see MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1358 (11th Cir. 2016). Luckily though, we need not venture very far into its tangled web here. The Medicare provision at issue in this case is clear and clearly bars the plaintiff's claim. Accordingly, we affirm.

## I.

Though we need not wade too deep into Medicare's web, a short statutory background will still make the journey easier. This case concerns two statutory schemes under the umbrella of Medicare: the Medicare Secondary Payer Act ("MSP Act") and the Medicare Advantage Program.

*The Medicare Secondary Payer Act.* Sometimes more than one insurer is liable for an individual's medical costs. For example, a car accident victim may be entitled to recover medical expenses from both her own health insurance and the other driver's car insurance. Originally, whenever Medicare had overlapping obligations with a private insurer, Medicare paid first and let the private insurer pick

---

[*] Honorable Amul R. Thapar, United States Circuit Judge for the Sixth Circuit, sitting by designation.

up whatever medical expenses remained.  Medicare was the "primary" payer and the private insurer was the "secondary" payer.  *See Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1233–34 (11th Cir. 2016).

That changed in 1980 with the MSP Act.  *Id.* at 1234 (citing 42 U.S.C. § 1395y(b)).   Enacted amid rising Medicare costs, the MSP Act flipped the primary/secondary order described above.  The MSP Act made private insurers "primary" payers (pay first) and Medicare the "secondary" payer (pay only if a balance is remaining).  *Id.*  But primary payers can sometimes take a long time to pay (for instance, when a tort defendant or her insurer is contesting liability).  So the MSP Act carved out an exception:  when a responsible primary plan does not "promptly meet its obligations," Medicare can pay the entire amount upfront, so long as the primary plan eventually reimburses Medicare for any amounts it overpaid. *Netro v. Greater Baltimore Med. Ctr., Inc.*, 891 F.3d 522, 524 (4th Cir. 2018) (citing 42 U.S.C. § 1395y(b)(2)(B)).

To give the reimbursement requirement some teeth, the MSP Act created a cause of action that permits the government to sue when it is not properly reimbursed.  *Id.*  But insured individuals (and other private entities) are often in a better position than the government to know about the existence of responsible primary plans.  *Id.*  So the MSP Act also created a second cause of action for private plaintiffs.  Successful private plaintiffs receive double damages, and while they must

give Medicare its share of the recovery, they can keep whatever is left over. *See Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1307 (11th Cir. 2006) (citing 42 U.S.C. § 1395y(b)(3)(A) (double damages); *id.* § 1395y(b)(2)(B)(iv) (Medicare's subrogation rights)). This scheme "'encourage[s] private parties who are aware of non-payment by primary plans to bring actions to enforce Medicare's rights.'" *Humana Med.*, 832 F.3d at 1235 (quoting *Glover*, 459 F.3d at 1307). In the car accident example, say that Medicare pays for the accident victim's medical expenses, but the other driver's car insurance, despite having an obligation to pay, does not. In that case, the car insurance company is a primary plan that has failed to fulfill its obligations. So the accident victim may sue it under the MSP Act and, if successful, recover on her own behalf.

*Medicare Advantage Organizations.* Almost two decades after introducing the MSP Act, Congress enacted the Medicare Advantage Program (also known as Medicare Part C). 42 U.S.C. § 1395w–21 *et seq.* This statute aims to reduce Medicare costs through semi-privatization; it permits Medicare to effectively sub-contract its duties to private insurers, operating as Medicare Advantage Organizations (commonly called "MAOs"). *Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1152–53 (9th Cir. 2013). Under these contracts, Medicare pays the MAO a fixed fee per enrollee, and, in exchange, the MAO must provide at least the same benefits to the enrollee that she would receive under traditional Medicare.

4

*Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584, 586 (11th Cir. 2017).

Since MAOs stand in the shoes of Medicare, Congress implemented a similar primary/secondary payment structure to govern situations when MAOs have overlapping obligations with other insurers. MAOs, like Medicare, are "secondary" payers, stepping in once the primary payer has fulfilled its obligation. MAOs, like Medicare, can make payments in excess of their secondary obligations, conditioned on later receiving reimbursement from the primary payer. *Humana Med.*, 832 F.3d at 1235 (citing 42 U.S.C. § 1395w-22(a)(4)). And finally, MAOs, like Medicare, can sue primary plans to ensure they are properly reimbursed. *Id.* at 1238. But *unlike* Medicare, MAOs must rely on the private cause of action when they sue. They cannot use the separate government cause of action. *See id.* at 1236–38; 42 U.S.C. § 1395y(b)(2)(B)(iii) ("[T]he *United States* may bring an action against any or all entities that are or were required or responsible . . . to make payment . . . under a primary plan. . . . In addition, the *United States* may recover . . . from any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity." (emphasis added)).

## II.

Florida Healthcare Plus, Inc. ("FHCP") is an MAO. In 2013, one of FHCP's enrollees got into a car accident and received treatment at St. Mary's Medical Center,

Inc.'s ("St. Mary's") hospital.  Two plans covered her treatment.  Allstate, as her private insurance company, was the "primary" payer.  And FHCP also covered her treatment as the "secondary" payer.  But, instead of billing Allstate first, St. Mary's billed both Allstate and FHCP for the same medical treatment.  And they both paid.  Several months later, without any prompting from FHCP, St. Mary's reimbursed FHCP for the full amount of its prior payment—about $286.

FHCP subsequently assigned its MSP Act claims to La Ley Recovery Systems, Inc. ("La Ley"), which in turn assigned those claims to MSPA Claims 1, LLC ("MSPA").  MSPA is a firm that obtains MSP Act claims and brings them on behalf of MAOs.  After the assignment, MSPA sued St. Mary's and its parent hospital group, Tenet Florida, Inc. (collectively "Tenet"), over the delayed $286 reimbursement.  Tenet moved to dismiss, and the district court granted its motion.  MSPA appealed to this Court.  We review de novo, accepting MSPA's well-pled factual allegations as true.  *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1312 (11th Cir. 2015).

## III.

We start by assessing whether MSPA has standing to invoke a federal court's jurisdiction.  Standing ensures the judiciary stays within its constitutional role: resolving "Cases" and "Controversies"—i.e., discrete disputes between parties.  U.S. Const. art. III, § 2; *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009).  To that

end, every plaintiff must show that it (1) suffered an injury-in-fact (2) that is fairly traceable to the defendant's conduct and (3) is redressable by a favorable judicial decision. *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018).

Injury-in-fact is the only element in dispute. Though MSPA itself did not suffer an injury-in-fact, "the assignee of a claim has standing to assert the injury in fact suffered by the assignor." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 286 (2008) (quoting *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000)). Thus, MSPA has standing if (1) its ultimate assignor FHCP suffered an injury-in-fact, and (2) FHCP's claim arising from that injury was validly assigned to MSPA. MSPA has shown both.

## A.

First, we address whether FHCP suffered an injury-in-fact. "Injury-in-fact" has a technical meaning—"an invasion of a legally protected interest." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). An injury-in-fact must be both (1) particularized ("affect the plaintiff in a personal and individual way") and (2) concrete ("real, and not abstract"). *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548–49 (2016) (internal quotation marks omitted). Here, at the pleading stage, "general factual allegations" showing these elements will suffice. *Lujan*, 504 U.S. at 561. And since there is no dispute the alleged injury was "particularized" to FHCP, we need only assess whether it was "concrete."

7

Tenet argues that FHCP's only "injury" was not getting its $286 reimbursement, and that injury disappeared when FHCP was paid in full. Therefore, according to Tenet, there is no injury at all, let alone a concrete one. But that description of FHCP's alleged injury is too narrow. FHCP's alleged injury stems not just from its entitlement to reimbursement of the appropriate amount but also from its entitlement to receive that reimbursement *on time*. MSPA alleges that the reimbursement was seven months late.

The question is whether delay alone is a "concrete" injury. It is. MSPA alleges a type of economic injury, which is the epitome of "concrete." *See Craig v. Boren*, 429 U.S. 190, 194–95 (1976) (collecting cases). For seven months, FHCP was unable to use money that (allegedly) belonged to it. The inability to have and use money to which a party is entitled is a concrete injury. *Id.* FHCP's harm cannot be remedied by simply receiving the amount owed—it requires something more to compensate for the lost time, like interest. And MSPA alleges it is entitled to both interest (and double damages) because of St. Mary's delay in reimbursing FHCP. *See Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1038–39 (11th Cir. 2008) (recognizing lost economic opportunity as an injury-in-fact).

Paying interest as compensation for lost time is nothing new. FHCP's alleged harm is analogous "to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts[,]" *Spokeo*, 136 S. Ct. at 1549—a

8

debtor's delinquent payment to a creditor.  In effect, FHCP gave St. Mary's a $286 loan, and St. Mary's paid it back seven months late.  As *Spokeo* teaches, this close analogy to a traditional common law right further supports concreteness.  *Id.*  Thus, MSPA has adequately alleged that FHCP suffered an injury-in-fact.

B.

Although *FHCP* suffered an injury-in-fact, *MSPA* only has standing if it was validly assigned the right to sue to vindicate that injury.  *Cf. US Fax Law Ctr., Inc. v. IHire, Inc.*, 476 F.3d 1112, 1120 (10th Cir. 2007) ("If a valid assignment confers standing, an invalid assignment defeats standing . . . ."); *accord Allstate Ins. Co.*, 835 F.3d at 1357–58.  Two possible problems exist with FHCP's assignment to MSPA:  (1) the "chain" of assignment from FHCP to La Ley to MSPA and (2) an anti-assignment clause in FHCP's contract with Tenet.  As these are factual attacks on MSPA's standing, we must look beyond the allegations of the complaint to address them.  *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335–36 (11th Cir. 2013).

*Chain of assignment*.  MSPA's claim originally belonged to FHCP.  FHCP assigned its MSP Act claims to La Ley, and in turn La Ley assigned those claims to MSPA.  But between those two assignments, FHCP entered receivership proceedings and repudiated the assignment to La Ley.  And after FHCP's receiver learned of La Ley's assignment to MSPA, it disputed La Ley's right to assign the

9

MSP Act claims. As a result, numerous district courts have concluded that MSPA lacked standing because of this chain-of-assignment problem. *See MSPA Claims 1, LLC v. Covington Specialty Ins. Co.*, 212 F. Supp. 3d 1250, 1257–58 (S.D. Fla. 2016) (summarizing the facts and collecting cases).

But things have changed. One week before filing this lawsuit, FHCP entered into a settlement agreement with La Ley and MSPA. The settlement fully resolved the MSP Act assignment dispute and confirmed La Ley's assignment of FHCP's claims to MSPA. Tenet does not point to any chain-of-assignment problems arising between that settlement and MSPA filing its amended complaint. *See Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275–76 (11th Cir. 2003) ("Article III standing must be determined as of the time at which the plaintiff's complaint is filed."). Thus, MSPA's chain of assignment supports standing.

*Anti-assignment provision.* A second potential obstacle may block MSPA's standing: FHCP's "Hospital Services Agreement" with Tenet. D.E. 17-5. The Services Agreement coordinated Tenet's provision of medical services to FHCP's enrollees. And it contained an anti-assignment clause: "[n]either party may assign this Agreement in whole or in part without the express written consent of the other party." *Id.* ¶ 6.7. Tenet argues that it never consented to FHCP's assignment to La Ley, meaning La Ley's purported assignment to MSPA was invalid, and MSPA lacks standing.

10

Tenet's argument fails because it overextends the scope of the anti-assignment clause. Anti-assignment provisions only cover claims within their scope. *See Allstate Ins. Co.*, 835 F.3d at 1358; *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1347, 1350–51 (11th Cir. 2009). By its own terms, the anti-assignment provision of the Services Agreement states that it prevents either party from assigning "*this Agreement*" without consent. D.E. 17-5 ¶ 6.7 (emphasis added). But FHCP never purported to assign its rights under the Services Agreement—instead, FHCP assigned its rights under *the MSP Act*. And MSPA is only suing based on those rights; it brings no contractual claims under the Services Agreement. Therefore, MSPA's claim is outside the scope of the anti-assignment clause. *Cf. Riley v. Hewlett-Packard Co.*, 36 F. App'x 194, 195–96 (6th Cir. 2002) (unpublished).

This circuit reached a similar conclusion in a case involving MSPA's standing and an analogous statutory anti-assignment provision. *See Allstate Ins. Co.*, 835 F.3d at 1357–58. *Allstate* held that since "FHCP assigned to [MSPA] a claim created by statute . . . entirely separate from its contract," an anti-assignment provision did not bar standing. *See id.* (citing 41 U.S.C. § 6305(a)). And this makes sense. To use a hypothetical—suppose that during the course of Tenet and FHCP's contractual relationship, Tenet infringed one of FHCP's patents. Plainly, the anti-assignment clause of the Services Agreement would not give Tenet effective veto power over

11

FHCP's ability to assign its patent infringement claim to someone else. FHCP had plenty of other rights outside of the Services Agreement. It was free to assign those rights without having to ask for Tenet's consent. This MSP Act claim is one of those rights.

In response, Tenet argues that MSP Act claims *are* within the scope of the Services Agreement. But Tenet's arguments miss the mark. Tenet is right that MAOs and providers are generally free to "define the terms of their own agreements without reference to the Medicare [statute]" so long as those agreements do not conflict with the statute. *Tenet Healthsystem*, 875 F.3d at 591; *see also King v. Allstate Ins. Co.*, 906 F.2d 1537, 1540 (11th Cir. 1990). Tenet is also right that its contract may affect MSPA's ability to recover. For example, the Services Agreement required FHCP to submit reimbursement requests within a year, and Tenet claims that FHCP did not do so here. FHCP assigned its MSP Act claims as they were, along with whatever defenses accompanied them. *See DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*, 469 F. App'x 762, 765 (11th Cir. 2012) (unpublished). But they are still *MSP Act claims*. Even if the Services Agreement contains provisions restricting MSP Act rights, it does not transform MSP Act claims into contract claims under the Agreement itself. To return to the patent infringement example—though FHCP could freely assign any patent infringement claims it had against Tenet, if the Services Agreement had another provision limiting FHCP's

12

ability to recover for patent infringement (e.g., requiring that FHCP bring any infringement claims within one year), then Tenet could conceivably rely on that provision to defend against an assignee's infringement suit. But that would be a merits issue, not a standing issue.

*    *    *

FHCP suffered an injury-in-fact when it had to wait seven months for appropriate reimbursement. And it validly assigned the right to vindicate that injury to La Ley, who in turn validly assigned it to MSPA. As a result, MSPA has standing.

IV.

Although MSPA has standing, its claim still must be plausible on the merits to survive dismissal. The MSP Act's private cause of action is only available "in the case of *a primary plan* which fails to provide for primary payment (or appropriate reimbursement)." 42 U.S.C. § 1395y(b)(3)(A) (emphasis added). Yet MSPA has not sued a primary plan; it has sued two medical services providers. Since private MSP Act plaintiffs can only sue primary plans, and MSPA has not done so, its claim is not "plausible on its face." *Davidson*, 797 F.3d at 1312 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). MSPA attempts to avoid the clear textual bar to its lawsuit by grasping at other provisions of the statute and agency regulations interpreting it. But these attempts at avoidance all fail. The district court correctly dismissed MSPA's complaint for failure to state a claim.

13

Though the MSP Act as a whole is "remarkably abstruse," *Allstate Ins. Co.*, 835 F.3d at 1358, the private cause of action is remarkably simple. It reads, in full:

> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

42 U.S.C. § 1395y(b)(3)(A). On its face, the text is clear: plaintiffs can only sue primary plans when they fail to pay. If a plaintiff sues someone else who has not paid, like a medical provider, then the dispute is not a "case of a primary plan which fails to [pay]"—the dispute does not center on a "primary plan" at all. *Id.* Although other entities could "fail[] to provide for primary payment (or appropriate reimbursement)[,]" the provision does not authorize suits against any entity that fails to do so. Every word that appears after "a primary plan" is limited to modifying that noun and that noun only. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 152 (2012) ("[A] postpositive modifier normally applies only to the nearest reasonable referent."). Thus, unsurprisingly, this Court has repeatedly assumed that the private cause of action only permits suits against primary plans. *See, e.g.*, *Allstate Ins. Co.*, 835 F.3d at 1355 ("Congress created a private cause of action against a primary plan that fails to provide for primary payment."); *Humana Med.*, 832 F.3d at 1239.

14

Of course, Congress could have enacted a private cause of action "in the case of any entity" that fails to pay. And we know they knew how to draft such a statute because that is exactly what Congress did for the *government's* cause of action. Unlike the private cause of action, the government's cause of action broadly permits lawsuits against "any entity that has received payment from a primary plan"—a grant that includes medical providers. 42 U.S.C. § 1395y(b)(2)(B)(iii); *see also Haro v. Sebelius*, 747 F.3d 1099, 1116 (9th Cir. 2014); *United States v. Stricker*, 524 F. App'x 500, 504 (11th Cir. 2013) (unpublished). The fact that the government's cause of action explicitly authorizes lawsuits against medical providers clearly suggests that the private cause of action does not do so implicitly. "[W]here Congress demonstrates awareness of an issue by expressly addressing it in one provision, silence on the issue in a similar provision is presumed to be intentional." *Assa'ad v. U.S. Att'y Gen.*, 332 F.3d 1321, 1331 (11th Cir. 2003) (citing *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 184 (1994)). MSPA's only response is that a separate statute established MAOs over a decade after the MSP Act. But this misses the point: while MAOs did not exist when Congress passed the MSP Act, medical providers and other potentially-liable entities obviously did. Congress was aware that these entities existed, could be liable for reimbursement, and, in fact, made them liable when the government was suing. But

15

Congress did not provide for a private cause of action against these entities. Courts must presume that difference in statutory language has meaning. *Id.*

In the face of clear language from the provision at issue and a clear inference from statutory context, MSPA relies on an isolated cross-reference—the private cause of action's cross-reference to paragraph (2)(A). Paragraph (2)(A), in turn, cross-references paragraph (2)(B), which establishes the MSP Act's conditional primary payment and reimbursement scheme. *See generally Humana Med.*, 832 F.3d at 1241 (W. Pryor, J., dissenting) (describing the structure of these paragraphs) (citing 42 U.S.C. § 1395y(b)(2)(A), (b)(2)(B)). MSPA argues that this cross-reference within a cross-reference settles the matter. Under MSPA's view, concepts from paragraph (2)(B) should be incorporated back into the private cause of action in paragraph (3)(A). These (2)(B) concepts include the requirement that "*an entity that receives payment from a primary plan*"—like St. Mary's received from Allstate in this case—"shall reimburse the appropriate [party] for any payment made by the [U.S. Department of Health and Human Services] Secretary." 42 U.S.C. § 1395y(b)(2)(B)(ii) (emphasis added). Thus, MSPA argues, because obligations of medical providers like Tenet are incorporated-by-reference-within-a-reference into the private cause of action, Tenet is amenable to suit under that provision.

This argument is a stretch. At times, cross-references are instructive to understanding the meaning of a statute. But courts should not dig through layers of

cross-references and then use what they have unearthed to replace the text of the provision right in front of them. *Cf. Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("Congress designed the Act in a specific way, and it is not our proper role to redesign the statute."). Rather, cross-references are read in conjunction with the provision being interpreted. And here the private cause of action states that primary plans can be sued when they "fail[] to provide for primary payment . . . *in accordance with* paragraphs (1) and (2)(A)." 42 U.S.C. § 1395y(b)(3)(A) (emphasis added). The phrase "in accordance with" is critical because it limits the role these cross-references play. The phrase limits the cause of action to instances when primary plans do not follow (read: act in accordance with) paragraphs (1) and (2)(A). For one, this means that primary plans cannot be sued when they *do* pay in accordance with (1) and (2)(A). For another, it indicates that this is a narrow cause of action limited to failing to pay under those specific provisions—not some far-reaching cause of action to hale primary plans into court under any circumstances or for other potential statutory violations. It is only for primary plan violations of paragraphs (1) and (2)(A). Congress could have sought to use a cross-reference to (2)(A) and (2)(B) to delineate a broader list of parties that can be sued, but that would be a different statute. In short, MSPA's cross-reference-within-a-cross-reference argument fails. We have read paragraph (2)(B) into the private cause of action only to the very limited extent of determining when an

17

entity's status as a primary plan has been "demonstrated." *See Glover*, 459 F.3d at 1308–09 (holding that a private plaintiff cannot sue a primary plan until that primary plan's responsibility to pay "has been demonstrated" under paragraph (2)(B)); *see also Allstate*, 835 F.3d at 1359 (following *Glover*).

In the alternative, MSPA asks us to defer to regulations promulgated by the Centers for Medicare and Medicaid Services ("CMS"). These regulations state that MAOs have the same MSP Act recovery rights as Medicare, including the right to sue medical providers. 42 C.F.R. §§ 411.24(g), 422.108(f). But we only defer to such regulations if, after "applying the ordinary tools of statutory construction," we find the statute "'silent or ambiguous with respect to the specific issue'" before us. *City of Arlington v. FCC*, 569 U.S. 290, 296 (2013) (quoting *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)). When the statute is clear, "that is the end of the matter." *Id.* Here, the text of the MSP Act's private cause of action clearly answers the question before us. Accordingly, there is no need to look for answers in CMS regulations. The statute provides all we need.

\*       \*       \*

The private cause of action only permits MSPA to sue primary plans. Neither of the Defendants here are primary plans, so MSPA's claim must be dismissed.

**AFFIRMED.**

18