JAMES S. MOODY, JR., UNITED STATES DISTRICT JUDGE
THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss (Dkt. 14), Plaintiff's Response (Dkt. 17) and Notice (Dkt. 18), Defendant's Reply (Dkt. 24), and Plaintiff's Notice of Supplemental Authority (Dkt. 25). After a review of the filings and the record, the Court will defer ruling on Defendant's Motion to Dismiss until after an evidentiary hearing. As discussed below, issues about Plaintiff's standing must be resolved before the Court can assess the sufficiency of Plaintiff's Complaint.
BACKGROUND
This lawsuit is based on alleged violations of the Medicare Secondary Payer ("MSP") provisions of the Medicare Act ("MSP Act"). See 42 U.S.C. § 1395y(b)(2)(A). Of relevance, Part C of the Medicare Act authorizes Medicare enrollees to obtain their Medicare benefits from private insurers instead of the government. This insurance is secondary to a primary insurance plan.[1] And by law, these private insurance entities[2] are "secondary *1238 payers" for certain medical expenses typically covered under an insured's primary coverage.
If a primary plan "has not made or cannot reasonably be expected to make payment" for covered medical expenses, Medicare insurers are authorized to make a conditional payment as a secondary payer. Id. at § 1395y(b)(2)(B)(i). The primary plan must then reimburse the Medicare insurance "if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service." Id. at § 1395y(b)(2)(B)(ii). The MSP provisions contain a private cause of action against a primary plan when the primary plan does not timely reimburse a secondary payer for its conditional payments.
Plaintiff MSPA Claims I, LLC ("MSPA") alleges entities that administer Medicare benefits assigned to MSPA their legal rights to recover reimbursement of conditional payments made on behalf of Medicare beneficiaries. MSPA alleges Defendant First Acceptance Insurance Company, Inc. ("FAIC") is a primary plan that failed to reimburse entities for their conditional payments under the MSP Act. FAIC issues motor vehicle policies with no-fault/personal injury protection benefits and/or medical payments to cover medical expenses arising from motor vehicle accidents.
MSPA illustrates the process of Medicare insurance coverage and secondary payments by referring to the situation of "D.W." MSPA explains that D.W. was involved in a motor vehicle accident. At the time of the accident, FAIC provided coverage to D.W. through her automobile insurance policy. D.W. was also a Medicare Part C beneficiary enrolled in an insurance plan administered by Florida Healthcare Plus, Inc. ("FHCP").[3] D.W. received medical services and treatment for her injuries, and her medical providers sent a bill to FHCP. FHCP paid for D.W.'s expenses, totaling $ 19,079.00. According to MSPA, FHCP assigned its legal rights to recover reimbursement to MSPA. MSPA alleges that FAIC failed to pay D.W.'s expenses and then, timely reimburse MSPA for FHCP's conditional payment.
MSPA asserts two causes of action in its class complaint: one under the private cause of action for the Medicare Act, and another for breach of contract under 42 C.F.R. 411.24(e). MSPA brings its lawsuit on behalf of FHCP and the following class members:
All Medicare Advantage Organizations, First Tier, Downstream and Related entities, or their assignees, that provide benefits under Medicare Part C, in the United States of America and its territories, who made conditional payments for a Medicare beneficiary's medical expenses resulting from injuries arising out of the ownership, maintenance, or use of a motor vehicle (the "accident-related medical expenses"), where Defendant:
(1) is the primary payer by virtue of having issued a motor vehicle insurance policy that offers no-fault/personal injury protection benefits ("PIP") and/or medical payments ("Med Pay") coverage for accident-related medical expenses to a Medicare beneficiary enrolled in a Medicare Advantage plan; and
(2) failed to reimburse the Medicare Advantage Organizations, First Tier, Downstream and Related entities, or their assignees, that made conditional payments on behalf of Medicare beneficiaries *1239 for their accident-related medical expenses.
This class definition excludes (a) Defendant, its officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.
(Dkt. 1, p. 32).
MSPA's alleged chain of assignment also bears mentioning. According to MSPA, FHCP, a secondary payer under the MSP Act, contracted with Centers for Medicare and Medicaid Services and provided Medicare benefits to its enrollees and participants. FHCP entered into an assignment agreement with La Ley Recovery Systems, Inc. ("La Ley"). The agreement noted that "any rights conferred to [FHCP] by Medicare Advantage plans either by statute, contract and/or any other reason whatsoever will be administered by La Ley Recovery." Dkt. 1-1. The agreement also required FHCP's approval of any subsequent assignee.[4]
Almost a year after FHCP's assignment to La Ley, La Ley assigned its rights to MSPA. Later, the Florida Department of Financial Services (FHCP's receiver) executed a settlement agreement with La Ley and MSPA confirming that "all rights, title and interest to recover payments made by FHCP on behalf of FHCP members pursuant to ... incidents recoverable pursuant to the Medicare Secondary Payer Act ... were and continue to be irrevocably assigned to La Ley." Dkt. 1-3. The settlement agreement noted that "the Assigned Claims may be assigned by ... La Ley," and "... any assignment of the rights ... [by] La Ley occurring prior to the execution of this Settlement Agreement shall be valid and enforceable." Id. MSPA alleges this settlement confirmed that La Ley validly assigned MSPA its rights under the MSP Act, including the right to recover reimbursement from primary insurers like FAIC.
MOTION TO DISMISS STANDARD
Attacks on subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) come in two forms. Meszaros ex rel. Meszaros v. United States , Case No. 8:05CV1214T30TGW, 2006 WL 1528939, at *1-2 (M.D. Fla. June 2, 2006) (Moody, J.); Lawrence v. Dunbar , 919 F.2d 1525 (11th Cir. 1990). "Facial attacks" on the complaint "require the court to merely look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the complaint are taken as true for the purposes of the motion." Lawrence , 919 F.2d at 1529. "Factual attacks," on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." See id.
With a facial attack, Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint when it fails to state a claim upon which relief can be granted. The Court must construe a complaint's factual allegations in the light most favorable to the plaintiff. Hunt v. Aimco Properties, L.P. , 814 F.3d 1213, 1221 (11th Cir. 2016) (internal citation omitted). To withstand a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct *1240 alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Pleadings that offer only "labels and conclusions," or a "formulaic recitation of the elements of a cause of action," will not do. Twombly, 550 U.S. at 555, 127 S.Ct. 1955.
With a factual attack, "no presumptive truthfulness attaches to [a] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id. The Eleventh Circuit has cautioned that a district court "should only rely on Rule 12(b)(1) '[i]f the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action.' " Morrison v. Amway Corp. , 323 F.3d 920, 925 (11th Cir. 2003) (citing Garcia v. Copenhaver, Bell & Associates, 104 F.3d 1256, 1261 (11th Cir.1997) ). If they do, the district court should treat the motion as a motion for summary judgment under Rule 56 and refrain from deciding disputed factual issues. Id. If a motion to dismiss asserts a lack of subject matter jurisdiction, the plaintiff bears the burden of showing that it has properly invoked the court's jurisdiction. Dominican Energy Ltd., Inc. v. Dominican Republic , 903 F.Supp. 1507, 1511 (M.D. Fla. 1995).
DISCUSSION
FAIC moves to dismiss MSPA's complaint or in the alternative, strike portions of the pleading. The Court will address FAIC's arguments related to MSPA's lack of standing. As discussed below, some of these issues require an evidentiary hearing.
Improper Pre-Suit Notice
FAIC argues MSPA lacks standing because it did not comply with § 627.736, Florida Statutes' pre-suit notice requirements. The Court will first address whether pre-suit notice was required here, and then, after concluding it was, whether MSPA met the pre-suit notice requirements.
Section 627.736 encompasses personal injury protection benefits for medical, disability, and death benefits. According to the statute, "[a]s a condition precedent to filing any action for benefits under this section, written notice of an intent to initiate litigation must be provided to the insurer." Fla. Stat., § 627.736(10). The notice "may not be sent until the claim is overdue." Id. And the notice must include certain information "with specificity." Id.
Interestingly, MSPA argues that nothing required it to send a demand letter to FAIC in this case, but it sent one anyway.[5] MSPA's demand letter even specified that it is "a formal demand letter under § 627.736(10)." Dkt. 1-9, p. 4. Though the parties dispute the necessity for pre-suit notice here, the Court concludes that MSPA was required to file a pre-suit notice in compliance with § 627.736(10), Florida Statutes. The notice is a "condition precedent" for an action seeking benefits under the statute, and MSPA sought these benefits. See also Bristol W. Ins. Co. v. MD Readers, Inc. , 52 So. 3d 48, 51 (Fla. Dist. Ct. App. 2010) (concluding statutory notice under § 627.736 was not required "because the declaratory judgment action seeks no damages whatsoever, [so] it is not an 'action for benefits.' ") (citing § 627.736, Fla. Stat.).
*1241 Further, "[c]ontrary to MSPA's arguments, the Secondary Payer Act does not eliminate the terms and conditions of underlying State no fault law." Ocean Harbor Cas. Ins. v. MSPA Claims, 1 , 261 So. 3d 637, 644 (Fla. 3d DCA 2018). See also Id. ("the Secondary Payer Act does not supersede an existing State insurance policy: it merely requires the exhaustion of the benefits under that policy."). MSPA points to no authority stating otherwise, and the Court has found none.
Turning to the sufficiency of the demand letter, FAIC argues the letter lacks the level of specificity required by the statute, was sent before any payment was due, and did not include a copy of the assignment. Based on the limited record at this stage, the Court cannot determine if all the pre-suit notice requirements were met. For example, the statute requires the notice "state with specificity ... the type of benefit claimed to be due." Fla. Stat., § 627.736(10). The demand letter does not discuss benefits with specificity. The letter does contain columns titled "dx01" through "dx08," but there is no explanation of the codes, including whether they even relate to any type of benefit. Because MSPA's compliance with the pre-suit notice requirements implicates MSPA's right to sue, it must be determined promptly. Accordingly, the Court will consider MSPA's compliance with the pre-suit notice requirements at an evidentiary hearing. See Holden v. Bober , 39 So. 3d 396, 402 (Fla. 2d DCA 2010) ("compliance with the requirements of [a statute's presuit notice requirements] ... [is o]ften ... accomplished by conducting an evidentiary hearing.").
Payment of D.W.'s Expenses
FAIC also argues MSPA lacks standing because it paid MSPA for D.W.'s medical expenses before MSPA initiated this lawsuit. So, FAIC argues, MSPA's claim for reimbursement is moot. MSPA argues it rejected the payment from FAIC. It also argues the payment was not the complete amount owed. Based on the limited record, including piecemeal email communications, the Court cannot determine whether payment was timely and in compliance with the MSP Act's reimbursement requirements. The parties do not discuss what date payment was due or overdue, which is central to this argument and the pre-suit notice issue. This issue further demonstrates the need for an evidentiary hearing and perhaps before then, some limited discovery.
As an additional point, if MSPA's demand letter met the statutory requirements and FAIC tendered the amount due, but payment was overdue, MSPA would still have standing to bring its claims. Said otherwise, if FAIC's payment was overdue, the payment would not render MSPA's claims moot. As the Eleventh Circuit recently explained, the "alleged injury stems not just from [MSPA's] entitlement to reimbursement of the appropriate amount but also from its entitlement to receive that reimbursement on time... The question is whether delay alone is a 'concrete' injury. It is." MSPA Claims 1, LLC v. Tenet Florida, Inc. , 918 F.3d 1312, 1318 (11th Cir. 2019).
Identical Lawsuit
FAIC also argues that MSPA already sued FAIC in the Southern District of Florida for reimbursement of covered expenses for D.W. and the case was dismissed. See MSPA Claims 1, LLC v. First Acceptance Ins. Co. , 16-20314-CIV, 2016 WL 4523850, at *2 (S.D. Fla. Aug. 29, 2016). There, the court concluded MSPA did not allege a valid assignment in its complaint because MSPA did not allege that FHCP approved its assignment. The *1242 Court also found merit in FAIC's factual attack on MSPA's standing, noting that the assignment from La Ley was not valid at the time MSPA filed its lawsuit. The court dismissed the case and later, denied reconsideration of its order. In denying reconsideration, the court explained that MSPA "is not prejudiced in filing a new lawsuit because the case is only at the pleading stage and [MSPA] may well re-plead its claims. MSPA Claims 1, LLC v. First Acceptance Ins. Co. , 16-20314-CIV, 2017 WL 3671033, at *5 (S.D. Fla. Aug. 24, 2017).
Even assuming MSPA's lawsuit in the Southern District of Florida was about the same "D.W." discussed in the instant case, as FAIC argues it is, the court's order was a dismissal without prejudice. MSPA was permitted to refile a new lawsuit if it chose.
Invalid Assignment
FAIC also argues that MSPA lacks standing because of issues in its chain of assignment. For instance, FAIC argues that FHCP did not approve the assignment from La Ley to MSPA, which was required for a valid assignment. The court in the aforementioned Southern District of Florida case found this argument persuasive. But today, this Court has the benefit of a new opinion from the Eleventh Circuit concluding otherwise.
In MSPA Claim 1, LLC v. Tenet Florida, Inc. , the Eleventh Circuit acknowledged that "numerous courts have concluded that MSPA lacked standing because of this chain-of-assignment problem." 918 F.3d at 1319. The court then observed that since those decisions, "... things have changed. One week before filing this lawsuit, FHCP entered into a settlement agreement with La Ley and MSPA. The settlement fully resolved the MSP Act assignment dispute and confirmed La Ley's assignment of FHCP's claims to MSPA." Id.
When MSPA filed the instant case on September 13, 2018, the settlement agreement referenced by the Eleventh Circuit was in effect. The Court is therefore inclined to conclude that based on the Eleventh Circuit's decision, MSPA has a valid assignment of rights for its cause of action. Since the Court is referring other standing issues to a hearing, the Court will allow the parties to present argument about the application of this Eleventh Circuit decision at the hearing, if they choose.
CONCLUSION
MSPA's lawsuit is yet another one of its attempts to bring a class action against an insurance company under the MSP Act.[6] At this stage of the litigation, MSPA's standing is at issue. Specifically, questions about MSPA's pre-suit demand letter and FAIC's payment remain a concern for the Court. The Court will therefore refer the matter to the Magistrate Judge assigned to this case to conduct an evidentiary hearing. The Court will leave the issue of conducting limited discovery before the hearing to the Magistrate Judge's discretion.
Upon review and consideration, it is therefore
ORDERED AND ADJUDGED that:
*1243 1. The Court hereby refers the issues discussed in this Order to Magistrate Judge Christopher P. Tuite. Magistrate Judge Tuite shall conduct an evidentiary hearing to determine the standing issues described herein.
DONE and ORDERED in Tampa, Florida, this 6th day of May, 2019.

"A "primary plan" is a group health plan, worker's compensation plan or law, automobile or other liability insurance policy or plan, no-fault insurance, or self-insured plan that has made or can reasonably be expected to make payment for an item or service." Humana Med. Plan, Inc. v. W. Heritage Ins. Co. , 832 F.3d 1229, 1233 (11th Cir. 2016) (citing 42 U.S.C. § 1395y(b)(2)(A) ).

The entities include Medicare Advantage Organizations ("MAOs") and First-Tier, Downstream, and Related Entities ("FDR entities"), including Managed Service Organizations ("MSOs") and Independent Physicians Associations ("IPAs").

According to MSPA, FHCP is a Health Maintenance Organization ("HMO") and participant in Medicare by way of a Medicare Advantage ("MA") plan.

Months later, FHCP entered into receivership.

MSPA argues a demand letter here was "not required by the MSP Act, the governing regulations, or interpretive case law," but cites none of these authorities (and no authority in general) to support its argument. (Dkt. 17, p. 9).

See e.g. , MSP Recovery, LLC v. Allstate Ins. Co. , 835 F.3d 1351, 1355 (11th Cir. 2016) (consolidating cases); MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co. , 322 F. Supp. 3d 1273, 1276 (S.D. Fla. 2018) ; MSPA Claims 1, LLC v. Covington Specialty Ins. Co. , 212 F.Supp.3d 1250, 1258 (S.D. Fla. 2016) ; MAO-MSO Recovery II, LLC v. Am. Family Mut. Ins. Co. , No. 17-CV-175-JDP, 2018 WL 835160, at *1 (W.D. Wis. Feb. 12, 2018) ; MAO-MSO Recovery II, LLC v. Gov't Employees Ins. Co. , No. PWG-17-711, 2018 WL 999920, at *7 (D. Md. Feb. 21, 2018) MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co. , 117CV01541JBMJEH, 2018 WL 2392827, at *1 (C.D. Ill. May 25, 2018)