**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GLOBAL RESCUE JETS, LLC, DBA
Jet Rescue, a Delaware corporation,
*Plaintiff-Appellant*,

v.

KAISER FOUNDATION HEALTH PLAN,
INC.,
*Defendant-Appellee.*

No. 20-56410

D.C. No.
3:19-cv-01737-
L-NLS

OPINION

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, District Judge, Presiding

Argued and Submitted January 10, 2022
Pasadena, California

Filed April 8, 2022

Before: A. Wallace Tashima, Milan D. Smith, Jr., and
Paul J. Watford, Circuit Judges.

Opinion by Judge Watford

# SUMMARY[*]

## Medicare Act

The panel affirmed the district court's dismissal for lack of subject matter jurisdiction of an action brought by Global Rescue Jets, LLC, which sought recovery of amounts it had billed Kaiser Foundation Health Plan, Inc., for international air ambulance services it provided to two patients who were enrolled in Kaiser Medicare Advantage plans under Medicare Part C.

Global Rescue Jets, which does business as Jet Rescue, billed Kaiser at Jet Rescue's usual and customary rates. Kaiser paid only a fraction of the billed amount, however, because in its view Jet Rescue's services were covered by Medicare and thus subject to payment at the much lower Medicare-approved rates.

The panel affirmed the district court's dismissal on the ground that Jet Rescue, assignee of the two patients' claims for healthcare benefits, failed to exhaust its administrative remedies under the Medicare Act. The panel held that the administrative review scheme under the Medicare Advantage program is modeled on the administrative review scheme Congress established under original Medicare, and it is well settled that, pursuant to 42 U.S.C. § 405, original Medicare beneficiaries must exhaust their administrative remedies before seeking judicial review of a claim for benefits. The panel concluded that there was no basis for creating a different rule with respect to administrative

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

exhaustion under the Medicare Advantage program. Accordingly, the panel held that the administrative exhaustion requirement imposed by Medicare Part C includes a both non-waivable "presentment" requirement and a waivable requirement that enrollees pursue a claim for benefits through each available level of administrative review.

The panel concluded that Jet Rescue met the first of these requirements but not the second and therefore failed to exhaust administrative remedies. The panel rejected Jet Rescue's arguments that 42 U.S.C. § 405(h) did not bar its lawsuit against Kaiser because (1) a Medicare Advantage organization is not an "officer or employee" of the United States or the Secretary of Health and Human Services, and (2) this lawsuit did not involve claims "arising under" the Medicare Act.

The panel also rejected Jet Rescue's contention that the exhaustion requirement should be excused. The panel held that the exhaustion requirement may be excused if three conditions are satisfied: (1) the plaintiff's claim is wholly collateral to a claim for Medicare benefits; (2) the plaintiff has made a colorable showing of irreparable harm; and (3) exhaustion would be futile. The panel concluded that Jet Rescue failed to meet the first and third requirements.

**COUNSEL**

George P. Barbatsuly (argued), K&L Gates LLP, Newark, New Jersey; Caitlin C. Blanche, K&L Gates LLP, Irvine, California; for Plaintiff-Appellant.

Moe Keshavarzi (argued), Sheppard Mullin Richter & Hampton LLP, Los Angeles, California; Matthew G. Halgren, Sheppard Mullin Richter & Hampton, San Diego, California; for Defendant-Appellee.

**OPINION**

WATFORD, Circuit Judge:

Plaintiff Global Rescue Jets, which does business as Jet Rescue, provided international air ambulance services to two patients who became seriously ill while in Mexico. Both patients were enrolled in Medicare Advantage plans offered by defendant Kaiser Foundation Health Plan, Inc. Jet Rescue flew the patients from a hospital in Mexico to a hospital in San Diego and billed Kaiser for those services at Jet Rescue's usual and customary rates. Kaiser paid only a fraction of the billed amount, however, because in its view Jet Rescue's services were covered by Medicare and thus subject to payment at the much lower Medicare-approved rates. Jet Rescue contends that its services were not covered by Medicare and that, under the terms of Kaiser's plans, it is entitled to be paid in full.

Jet Rescue brought this action against Kaiser to recover the additional sums Kaiser allegedly owes. The district court dismissed the action for lack of subject matter jurisdiction on the ground that Jet Rescue failed to exhaust its

administrative remedies under the Medicare Act.  On appeal, Jet Rescue argues that it was not required to exhaust administrative remedies before filing suit and that the exhaustion requirement should have been excused in any event.  We reject both arguments and accordingly affirm the district court's judgment.

I

A

Medicare is a federally subsidized health insurance program covering the elderly and disabled.  Under Parts A and B of the program, which we will refer to as original Medicare, the federal government pays health care providers on a fee-for-service basis at rates approved by the agency that administers Medicare, the Centers for Medicare and Medicaid Services (CMS).  CMS is an agency housed within the Department of Health and Human Services.

In 1997, Congress amended the Medicare Act by adding a new Part C, which created the program now known as Medicare Advantage.  Balanced Budget Act of 1997, Pub. L. No. 105-33, § 4001, 111 Stat. 251 (1997).  Under the Medicare Advantage program, individuals eligible for Medicare may enroll in health insurance plans offered by private entities known as Medicare Advantage organizations, rather than receive benefits on a fee-for-service basis under Parts A and B.  42 U.S.C. § 1395w-21(a)(1).  CMS enters into contracts with Medicare Advantage organizations under which CMS pays a fixed monthly sum per enrollee, § 1395w-23(a)(1)(A), and in return the Medicare Advantage organization agrees to provide the health care services that the federal government would have paid for under Parts A and B.  § 1395w-22(a)(1). A Medicare Advantage organization thus assumes, with

respect to each enrollee, "full financial risk on a prospective basis for the provision of the health care services" that would have been covered under original Medicare. § 1395w-25(b).

Medicare Advantage plans must provide benefits for services covered under Parts A and B, but they may also offer "supplemental benefits" for services not covered by original Medicare. § 1395w-22(a)(3); 42 C.F.R. § 422.100(c)(2). Supplemental benefits are paid for entirely by plan enrollees through additional premiums or cost sharing. 42 C.F.R. §§ 422.100(c)(2), 422.102(c). They can be offered as "mandatory" supplemental benefits, which enrollees in the plan are required to accept, or as "optional" supplemental benefits, which enrollees are free to accept or reject as they see fit. § 422.102(a), (b). CMS generally has little say over the package of supplemental benefits that a plan chooses to offer, but the terms of all Medicare Advantage plans must be approved by CMS. 42 U.S.C. §§ 1395w-26(b), 1395w-27(a); 42 C.F.R. § 422.100(f).

Medicare Advantage organizations can contract with health care providers to ensure that enrollees are afforded the benefits promised under the plan. If the agreement between the plan and these "contract providers" specifies the amount the provider will accept as payment for services, the plan generally must pay the provider at the rates specified in the contract, rather than at the Medicare-approved rates set by CMS. *See RenCare, Ltd. v. Humana Health Plan of Texas, Inc.*, 395 F.3d 555, 558–59 (5th Cir. 2004).

In some circumstances, Medicare Advantage plans must pay for services rendered to plan enrollees even if the provider does not have a contract with the plan. As relevant here, those circumstances include situations in which the enrollee needs ambulance or other emergency medical services. 42 U.S.C. § 1395w-22(d)(1)(E); 42 C.F.R.

§§ 422.100(b)(1), 422.113.  If the services would have been covered under Parts A and B, the plan is obligated to pay these "non-contract providers" at least the Medicare-approved rate, 42 U.S.C. § 1395w-22(a)(2)(A); 42 C.F.R. § 422.100(b)(2), and the non-contract provider is obligated to accept the Medicare-approved rate as payment in full. 42 U.S.C. § 1395w-22(k)(1); 42 C.F.R. § 422.214(a)(1).

B

The two patients at the center of this case were enrolled in Medicare Advantage plans offered by Kaiser.  In unrelated incidents, both fell seriously ill while in Mexico and were unable to receive the care they needed there.  Jet Rescue provided emergency air ambulance services to transport the patients from Mexico to a Kaiser hospital in San Diego, California.  According to Jet Rescue's complaint, at the time of transport both patients assigned their claims for benefits under Kaiser's plans to Jet Rescue.  Jet Rescue did not have a contract with Kaiser governing the amount Kaiser would pay for the services, so Jet Rescue billed Kaiser at its usual and customary rates: $283,500 for one patient, and $232,700 for the other.

Kaiser refused to pay the billed amounts in full.  It took the position that Jet Rescue's air ambulance services would have been covered under original Medicare and thus were payable at the Medicare-approved rate, which Kaiser calculated as $23,096 for the first patient and $17,365 for the second.  Kaiser paid Jet Rescue those amounts but refused to pay the full amount Jet Rescue demanded.

Jet Rescue vigorously disputed Kaiser's determination that the services it rendered would have been covered under original Medicare.  Jet Rescue argued that its international air ambulance services fell outside the scope of original

Medicare and were instead covered under Kaiser's plans as an optional supplemental benefit for which the enrollees paid an additional premium. Jet Rescue asserted that, because the plans did not specify a contract rate for the services at issue, Kaiser was obligated to pay Jet Rescue at its "usual, reasonable, and customary rate."

After Kaiser rejected Jet Rescue's demand for payment in full, Jet Rescue sought reconsideration as to one of the two enrollees. In denying the request for reconsideration, Kaiser reiterated its position that the air ambulance services provided by Jet Rescue would have been covered under original Medicare and that Kaiser was therefore obligated to pay Jet Rescue no more than the Medicare-approved rate. Jet Rescue did not seek further administrative review of its claims as to either enrollee. Instead, it sued Kaiser in state court to recover the additional sums it contends Kaiser owes.

Jet Rescue alleges five causes of action: (1) breach of contract as the assignee of the enrollees' right to receive benefits under their Medicare Advantage plans; (2) breach of contract as a third-party beneficiary of the plans; (3) breach of the implied covenant of good faith and fair dealing; (4) quantum meruit; and (5) violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 *et seq.* As the basis for its UCL claim, Jet Rescue alleges that Kaiser deceived enrollees into paying additional premiums for international air ambulance coverage that Kaiser does not in fact provide. Jet Rescue seeks damages of roughly $460,000 plus interest, as well as injunctive relief on its UCL claim.

Kaiser removed the action to federal court, asserting jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), and under the federal question statute, 28 U.S.C. § 1331, on the theory that Jet Rescue's

claims arise under (and are completely preempted by) the Medicare Act. Jet Rescue contests these asserted bases for federal jurisdiction, but it did not move to remand the case to state court. Instead, Jet Rescue filed a first amended complaint in which it alleged that diversity jurisdiction existed under 28 U.S.C. § 1332.

Kaiser filed a motion to dismiss the first amended complaint under Federal Rule of Civil Procedure 12(b)(1). Kaiser argued that Jet Rescue's failure to exhaust its administrative remedies under the Medicare Act precluded the court from exercising subject matter jurisdiction over the action. The district court granted Kaiser's motion, and Jet Rescue timely appealed.

## II

Our court has not previously addressed whether enrollees in a Medicare Advantage plan (or their assignees) are required to exhaust administrative remedies before seeking judicial review of a claim for benefits. But the administrative review scheme under the Medicare Advantage program is modeled on the administrative review scheme Congress established under original Medicare. And it is well settled that original Medicare beneficiaries must exhaust their administrative remedies before seeking judicial review of a claim for benefits. For the reasons explained below, we see no basis for creating a different rule with respect to administrative exhaustion under the Medicare Advantage program.

## A

As noted, under original Medicare, the federal government pays providers on a fee-for-service basis for services covered under Parts A and B. CMS contracts with

private entities known as "medicare administrative contractors" to process and pay claims in the first instance, at rates set by CMS for the service at issue.  42 U.S.C. § 1395kk-1(a); 42 C.F.R. § 405.904(a)(2).

To resolve disputes over a Medicare beneficiary's entitlement to benefits, Congress established a detailed administrative review scheme that borrowed elements of the review scheme governing claims for Social Security benefits.  *See* 42 U.S.C. § 1395ff(b)(1)(A).  Before filing suit in court, a Medicare beneficiary must proceed through five levels of administrative review, described in regulations issued by CMS as follows: (1) an initial determination by the medicare administrative contractor, 42 C.F.R. § 405.920; (2) a redetermination by the medicare administrative contractor, § 405.940; (3) reconsideration by a qualified independent contractor, § 405.960; (4) a hearing before an administrative law judge (ALJ) if the amount in controversy is $100 or more (adjusted for inflation), §§ 405.1000, 405.1006(b); and (5) review by the Medicare Appeals Council, § 405.1100.  If the beneficiary is dissatisfied with the Appeals Council's decision, he or she may then seek judicial review, but only if the remaining amount in controversy is $1,000 or more (adjusted for inflation). 42 U.S.C. § 1395ff(b)(1)(A); 42 C.F.R. §§ 405.1006(c), 405.1136.[1]

In *Heckler v. Ringer*, 466 U.S. 602 (1984), the Supreme Court held that federal courts generally lack subject matter jurisdiction to review the denial of a claim for Medicare benefits unless the beneficiary exhausts all available levels

---

[1] Providers are also subject to this review process when asserting claims either on their own behalf, *see* 42 C.F.R. § 405.906(a)(3), or as assignees of beneficiaries, § 405.912(a).

of administrative review. The Court based that holding on several interlocking statutory provisions, beginning with the provision of the Medicare Act governing review of claims for benefits, 42 U.S.C. § 1395ff(b)(1). *See Ringer*, 466 U.S. at 605–07. That statute provided then, much as it does now, that a Medicare beneficiary dissatisfied with the initial resolution of a claim for benefits "shall be entitled to a hearing thereon by the Secretary [of Health and Human Services] to the same extent as is provided in section 405(b) of this title and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title." 42 U.S.C. § 1395ff(b)(1) (1982). Section 405(g), in turn, allows an individual to seek judicial review "after any *final decision* of the [Secretary] made after a hearing to which he was a party" by filing a civil action in the appropriate federal district court. 42 U.S.C. § 405(g) (emphasis added). The Court in *Ringer* concluded that these provisions permit judicial review of a claim for benefits "only after the Secretary renders a 'final decision' on the claim." 466 U.S. at 605. And the Court noted that, pursuant to delegated rulemaking authority, "the Secretary has provided that a 'final decision' is rendered on a Medicare claim only after the individual claimant has pressed his claim through all designated levels of administrative review." *Id.* at 606.

The Court further held that § 405(g) provides the *exclusive* means for obtaining judicial review of a claim for benefits. *Id.* at 614–15. The Court based that holding on a separate provision, 42 U.S.C. § 405(h), which Congress has

expressly incorporated into each part of the Medicare Act. 42 U.S.C. § 1395ii.[2]  Section 405(h) provides:

> The findings and decision of the [Secretary] after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided.   No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

The Supreme Court construed this provision, together with § 405(g), as imposing two prerequisites of jurisdictional stature.  The first "consists of a nonwaivable requirement that a 'claim for benefits shall have been presented to the Secretary.'"  *Ringer*, 466 U.S. at 617 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976)). This requirement ensures that beneficiaries cannot bypass the administrative review process simply by refusing to file a claim and going straight to court. *See id.* at 621–22.  The second prerequisite consists of "a waivable requirement that

---

[2] Section 1395ii provides: "The provisions of sections 406 and 416(j) of this title, and of subsections (a), (d), (e), (h), (i), (j), (k), and (*l*) of section 405 of this title, shall also apply with respect to this subchapter to the same extent as they are applicable with respect to subchapter II, except that, in applying such provisions with respect to this subchapter, any reference therein to the Commissioner of Social Security or the Social Security Administration shall be considered a reference to the Secretary or the Department of Health and Human Services, respectively."  The subchapter in which § 1395ii appears is subchapter XVIII, the subchapter that includes the entirety of the Medicare Act.

the administrative remedies prescribed by the Secretary be pursued fully by the claimant." *Id.* at 617.  The upshot: Section 405(g) provides "the only avenue for judicial review" of a claim for benefits under the Medicare Act, and failure to exhaust one's administrative remedies deprives federal courts of subject matter jurisdiction over claims arising under the Act. *Id.*

As the Court has observed, administrative exhaustion requirements of the sort imposed by §§ 405(g) and 405(h) serve important functions.  Chief among them are reducing the burden on courts and facilitating judicial review of agency action. "Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975).  Bringing the agency's expertise to bear can be particularly useful in the Medicare context due to the enormous complexity of the Medicare Act and its voluminous regulations.  "CMS has extensive experience in determining the appropriate Medicare reimbursement rates for different procedures, and billing disputes that require application of the Medicare regulations can be resolved more efficiently if they are submitted to the agency in the first instance." *Tenet Healthsystem GB, Inc. v. Care Improvement Plus South Central Insurance Co.*, 875 F.3d 584, 589 (11th Cir. 2017).

B

When Congress enacted Part C of the Medicare Act in 1997, it imported the same administrative review scheme described above to resolve disputes between Medicare Advantage organizations and their enrollees over entitlement to benefits. *See* 42 U.S.C. § 1395w-22(g)(5). As fleshed out in regulations issued by CMS, administrative review under the Medicare Advantage program involves the same five levels of review, with only slight modifications. The first level of review involves an initial determination by the Medicare Advantage organization itself—called an "organization determination"—as to the benefits an enrollee is entitled to receive under the plan.  42 C.F.R. § 422.566(a). Importantly for our purposes, organization determinations encompass determinations regarding not only basic benefits (*i.e.*, services that would have been covered under Parts A and B) but also supplemental benefits.  *Id.*   The ensuing levels of review include reconsideration by the Medicare Advantage organization, §§ 422.578, 422.582; reconsideration by an independent outside entity, § 422.592; a hearing before an ALJ if the amount in controversy is $100 or more (adjusted for inflation), § 422.600; and review by the Medicare Appeals Council, § 422.608.  An enrollee who receives an adverse decision from the Appeals Council may then seek judicial review in federal district court if the remaining amount in controversy is $1,000 or more (adjusted for inflation).    42 U.S.C. § 1395w-22(g)(5); 42 C.F.R. § 422.612.[3]

The statutory provision establishing this review scheme, 42 U.S.C. § 1395w-22(g), tracks the language of the

---

[3] The regulations state that a provider may pursue these administrative remedies as an enrollee's assignee if it waives the right to

provision quoted above mandating administrative exhaustion under original Medicare, § 1395ff(b)(1).  Section 1395w-22(g) states that, after pursuing the first three levels of administrative review, an enrollee dissatisfied with the resolution of a claim for benefits "is entitled, if the amount in controversy is $100 or more, to a hearing before the Secretary to the same extent as is provided in section 405(b) of this title."  § 1395w-22(g)(5).  The provision further states that, "[i]f the amount in controversy is $1,000 or more, the individual or organization shall, upon notifying the other party, be entitled to judicial review of the Secretary's final decision as provided in section 405(g) of this title."  *Id.*  As noted earlier, Congress incorporated the provisions of § 405(h) into each part of the Medicare Act.  § 1395ii.  So the constraints on judicial review imposed by § 405(h) apply equally to claims for benefits under Part C.  *See Tenet Healthsystem*, 875 F.3d at 587.

Given this background, we think it evident that Congress intended to impose under the Medicare Advantage program the same administrative exhaustion requirement that applies to claims for benefits under original Medicare.  Section 1395w-22(g), like its statutory counterpart under original Medicare, conditions judicial review on a "final decision" of the Secretary and channels judicial review through § 405(g), subject to the same jurisdictional limitations imposed by § 405(h).  Congress imported these requirements into § 1395w-22(g) after the Supreme Court in *Ringer* had construed virtually identical language in § 1395ff(b)(1) to mandate administrative exhaustion as a prerequisite for obtaining judicial review of a claim for Medicare benefits.  That fact further bolsters the inference that Congress

demand payment from the enrollee.  42 C.F.R. §§ 422.566(c)(1)(ii), 422.574(b).

intended the provisions of §§ 1395w-22(g) and 1395ff(b)(1) to be interpreted in the same fashion.  *See Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 258–59 (2009).

That Congress intended to impose the same administrative exhaustion requirement under Part C is not surprising because the same rationale for requiring administrative exhaustion under original Medicare applies to the Medicare Advantage program as well.  Medicare Advantage plans must pay for all services covered under Parts A and B, so claims for benefits against a Medicare Advantage organization may involve disputes over how much an enrollee or her assignee is entitled to be reimbursed for those services.  CMS possesses considerable expertise in interpreting and applying the detailed regulations establishing the Medicare-approved reimbursement rates for such services.  Even when disputes arise as to whether a particular service would or would not have been covered under Parts A and B—the nature of the dispute in this case— interpretation of Medicare regulations issued by CMS defining the scope of coverage will still be necessary.  The agency's experience and expertise in interpreting those regulations can aid courts in conducting judicial review as authorized under the Act.

Accordingly, we conclude that the administrative exhaustion requirement imposed by Part C includes both of the jurisdictional prerequisites discussed in *Ringer*: a non-waivable "presentment" requirement, and a waivable requirement that enrollees pursue a claim for benefits through each available level of administrative review.

In this case, Jet Rescue complied with the non-waivable presentment requirement by submitting its claims to Kaiser in the first instance.  Congress mandated that Medicare Advantage organizations establish procedures for making

initial determinations as to an enrollee's entitlement to benefits, and such determinations constitute the first step in the administrative review process leading to a final decision by the Secretary. 42 U.S.C. § 1395w-22(g)(1)(A). Thus, submitting a claim for payment to the Medicare Advantage organization satisfies the requirement that a "claim for benefits shall have been presented to the Secretary." *Ringer*, 466 U.S. at 617 (quoting *Mathews*, 424 U.S. at 328).

Jet Rescue has not, however, satisfied the requirement that "the administrative remedies prescribed by the Secretary be pursued fully by the claimant." *Id.* Jet Rescue does not dispute that it pursued its assigned claims for benefits through just two of the five levels of administrative review as to one enrollee, and through just one level of review as to the other. Consequently, unless Jet Rescue's failure to exhaust its administrative remedies under Part C can be excused (an issue we address in section IV below), the district court lacked subject matter jurisdiction over Jet Rescue's claims to recover benefits allegedly owed under Kaiser's plans.[4]

## III

Jet Rescue counters the analysis above with two arguments predicated on the third sentence of § 405(h), the statutory provision construed by the Court in *Ringer* to bar subject matter jurisdiction absent exhaustion of administrative remedies. As a reminder, the third sentence provides: "No action against the United States, the

---

[4] We need not decide whether a different conclusion would be warranted in a case involving a contract provider, the scenario confronted by the Fifth Circuit in *RenCare, Ltd. v. Humana Health Plan of Texas, Inc.*, 395 F.3d 555 (5th Cir. 2004).

[Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter."   42 U.S.C. § 405(h).  Jet Rescue argues that § 405(h) does not bar its lawsuit against Kaiser because (1) a Medicare Advantage organization is not an "officer or employee" of the United States or the Secretary, and (2) this lawsuit does not involve claims "arising under" the Medicare Act.  We find neither argument persuasive.

A

Jet Rescue's first argument hinges on the fact that the third sentence of § 405(h) eliminates jurisdiction only with respect to claims brought against an "officer or employee" of the United States or the Secretary.  A Medicare Advantage organization, Jet Rescue contends, is not an officer or employee of the United States or the Secretary when administering a Medicare Advantage plan under Part C.  That is so, Jet Rescue asserts, because a Medicare Advantage organization bears full financial risk for providing the benefits that would have been covered under Parts A and B, and thus cannot be deemed to be acting on either the federal government's or the Secretary's behalf in administering those benefits.  According to Jet Rescue, the same is necessarily true of any supplemental benefits offered under a Medicare Advantage plan, since those benefits concern services not covered by Medicare at all.

We acknowledge the surface appeal of Jet Rescue's argument.  Labeling Medicare Advantage organizations "officers or employees" of the federal government or the Secretary is an awkward fit, given that one of Congress's aims in creating the Medicare Advantage program was to offload responsibility for providing Medicare benefits from the federal government to private enterprise, thereby

allowing Medicare to take advantage of innovations driven by profit motives.  *See* H.R. Rep. No. 105-149, at 1251 (1997).   But for three reasons, we are persuaded that Congress must have regarded Medicare Advantage organizations as officers or employees of the United States or the Secretary, at least for purposes of the third sentence of § 405(h).

First, although Medicare Advantage organizations are private entities, they are also an integral part of the administrative review scheme overseen by the Secretary of Health and Human Services.  As described above, Congress modeled the Medicare Advantage program's review scheme on the review scheme it created for original Medicare, with one modification:   Whereas medicare administrative contractors make initial benefits determinations for beneficiaries under original Medicare, Medicare Advantage organizations make the equivalent "organization determinations" for their enrollees.  As we have seen, a provider like Jet Rescue satisfies the non-waivable obligation to present its claims to the Secretary by seeking an organization determination from the Medicare Advantage organization.  It is hardly surprising, then, that Congress deemed Medicare Advantage organizations, as the first-level reviewers of claims for benefits under Part C, to be "officers or employees" of the Secretary for purposes of § 405(h).

Second, under Jet Rescue's interpretation of § 405(h), the detailed administrative review scheme Congress created would be wholly optional.   If Medicare Advantage organizations were not officers or employees of the United States or the Secretary under § 405(h), an enrollee dissatisfied with the organization's initial determination could skip the ensuing levels of administrative review and immediately sue the organization in court.   That

interpretation of the statute would, of course, defeat two of the primary rationales for creating the administrative review process in the first place: allowing the agency to bring its experience and expertise to bear in interpreting the complex set of regulations governing entitlement to benefits under Parts A and B, and permitting the agency to compile an adequate administrative record to facilitate judicial review. *See Salfi*, 422 U.S. at 765. We do not believe Congress went to the trouble of creating a multi-level administrative review scheme merely to have it invoked (or not) at the pleasure of enrollees or their assignees, particularly when Congress modeled that review scheme on one that the Supreme Court had earlier held to be mandatory and jurisdictional.

Third, if we were to accept Jet Rescue's interpretation of the administrative review scheme as wholly optional, Congress's imposition of the $1,000 amount-in-controversy requirement for judicial review would make no sense. By imposing that requirement, Congress presumably sought to spare federal courts from having to resolve a deluge of small-dollar claims for benefits from the more than 26 million enrollees in Medicare Advantage plans. *See Bodimetric Health Services, Inc. v. Aetna Life & Casualty*, 903 F.2d 480, 488 (7th Cir. 1990). Congress required exhaustion of administrative remedies with the expectation that many disputes would be resolved without judicial intervention, and it reserved judicial review for those cases in which the remaining amount in controversy is relatively substantial. Yet under Jet Rescue's interpretation of the third sentence of § 405(h)—which would exempt all suits against Medicare Advantage organizations from the provision's sweep—any enrollee dissatisfied with the plan's initial resolution of a claim for benefits could immediately file suit in court, regardless of the amount in controversy.

Our interpretation of § 405(h)'s third sentence is consistent, at least in result, with the limited case law that exists on administrative exhaustion requirements for Medicare plans provided by private entities.  In *Tenet Healthsystem*, the Eleventh Circuit concluded that non-contract providers seeking to recover payment from a Medicare Advantage organization—just as Jet Rescue seeks to do here—were required to exhaust their administrative remedies before filing suit.  875 F.3d at 588.  And in *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134 (9th Cir. 2010), we held that enrollees in a prescription drug plan offered by a private insurer under Part D of the Medicare Act, which is similar in some respects to the Medicare Advantage program created under Part C, were required to exhaust their administrative remedies before suing the insurer for benefits in court.  *Id.* at 1143–44.  Neither *Tenet Healthsystem* nor *Do Sung Uhm* addressed the "officer or employee" language in § 405(h)'s third sentence, but the courts could not have reached the results they did unless the private entity defendants were considered "officers or employees" of the United States or the Secretary.

In short, we conclude that a Medicare Advantage organization qualifies as an "officer or employee" of the United States or the Secretary, as those terms are used in the third sentence of § 405(h).[5]  We therefore reject Jet Rescue's contention that the administrative review scheme established under Part C is optional rather than mandatory.

---

[5] We have no occasion here to decide whether Medicare Advantage organizations would qualify as officers or employees of the United States under other statutes, such as the federal officer removal statute or the Federal Tort Claims Act.  *See Ohio State Chiropractic Association v. Humana Health Plan Inc.*, 647 F. App'x 619 (6th Cir. 2016); *Zanecki v. Health Alliance Plan of Detroit*, 577 F. App'x 394 (6th Cir. 2014).

B

Jet Rescue's second argument is that, even if Medicare Advantage organizations can be considered "officers or employees" of the United States or the Secretary, the third sentence of § 405(h) bars jurisdiction only as to claims that "arise under" the Medicare Act.  Because supplemental benefits offered under Medicare Advantage plans involve services that would not have been covered under original Medicare, *see* 42 C.F.R. § 422.100(c)(2), Jet Rescue contends that claims for supplemental benefits do not "arise under" the Medicare Act.  As a result, Jet Rescue submits, an enrollee or assignee pursuing a claim for supplemental benefits need not comply with Part C's administrative exhaustion requirement.

Claims "arise under" the Medicare Act in two circumstances: "(1) where the 'standing and the substantive basis for the presentation of the claims' is the Medicare Act; and (2) where the claims are 'inextricably intertwined' with a claim for Medicare benefits."  *Do Sung Uhm*, 620 F.3d at 1141 (quoting *Ringer*, 466 U.S. at 614, 615) (citations omitted).  Because California law provides the substantive basis for each of Jet Rescue's claims, we focus here on the second prong.  As we held in *Do Sung Uhm*, "where, at bottom, a plaintiff is complaining about the denial of Medicare benefits," the claim "arises under" the Medicare Act.  *Id.* at 1142–43; *cf. Ardary v. Aetna Health Plans of California, Inc.*, 98 F.3d 496, 500 (9th Cir. 1996) (holding that state law claims for wrongful death did not arise under the Medicare Act because they did not seek to recover benefits).

Jet Rescue's first four causes of action are contract-based claims that seek to recover the unpaid amount it billed Kaiser for transporting the two enrollees from Mexico to Kaiser's

hospital in San Diego.  Each of these claims is predicated on Jet Rescue's status as an assignee of the enrollees' claims for benefits under Kaiser's plans, for without that status Jet Rescue would have no basis for demanding payment from Kaiser.  The question with respect to these four claims is whether payment of the benefits Jet Rescue seeks to recover would constitute a payment of benefits under Part C of the Medicare Act.  We conclude that the answer is yes.

In addressing this issue, we find it unnecessary to resolve the parties' dispute over whether the air ambulance services Jet Rescue provided are covered under Kaiser's plans as supplemental benefits (as Jet Rescue contends), or as benefits that would have been covered under original Medicare (as Kaiser argues).  Even assuming that Jet Rescue is right on this point, supplemental benefits offered under a Medicare Advantage plan constitute benefits that are offered under Part C of the Medicare Act.  That is true, in our view, because the authority to offer supplemental benefits as part of a Medicare Advantage plan is derived entirely from Part C of the Act.  *See* 42 U.S.C. § 1395w-22(a)(3).

Jet Rescue's contention that claims for supplemental benefits do not "arise under" the Medicare Act—and are therefore exempt from the administrative exhaustion requirement—is difficult to reconcile with the statute's text. Congress made determinations regarding an enrollee's entitlement to basic *and* supplemental benefits subject to Part C's administrative review scheme.  Section 1395w-22(g) defines the first level of administrative review as "determinations [by a Medicare Advantage organization] regarding whether an individual enrolled with the plan of the organization under this part is entitled to receive a health service *under this section* and the amount (if any) that the individual is required to pay with respect to such service."

§ 1395w-22(g)(1)(A) (emphasis added).  The health services an enrollee is entitled to receive "under this section" include those that are covered by the plan's basic benefits as well as those covered by the plan's supplemental benefits. § 1395w-22(a)(1), (3).  That explains why the regulation defining "organization determinations" includes determinations regarding "basic benefits as described under § 422.100(c)(1) and mandatory and optional supplemental benefits as described under § 422.102."  42 C.F.R. § 422.566(a).  Thus, to our reading, neither the statute nor the regulation supports Jet Rescue's view that claims for supplemental benefits do not "arise under" Part C of the Medicare Act.

Jet Rescue's fifth and final cause of action seeks restitution and injunctive relief for an alleged violation of California's UCL.  That law prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  Jet Rescue alleges that, by advertising coverage for international air ambulance services as an optional supplemental benefit but paying for such services at Medicare-approved rates, Kaiser misled enrollees into paying for extra benefits that it then failed to provide.

Consumer protection claims do not always "arise under" the Medicare Act, as we held in *Do Sung Uhm*.  There, the plaintiffs alleged that the defendant made misrepresentations regarding the start date for coverage under its Part D prescription drug plan and the quality of its customer service.  620 F.3d at 1145.  Those claims, we said, asserted injuries that are "collateral to any claim for benefits; it is the misrepresentations themselves which the Uhms seek to remedy."  *Id.*  In other words, their claims could be proved "without regard to any provisions of the [Medicare] Act relating to provision of benefits."  *Id.*

Jet Rescue's UCL claim is readily distinguishable. Unlike claims founded on misrepresentations about coverage start dates or customer service, Jet Rescue's UCL claim rests directly on the interpretation of benefits provided under Kaiser's Medicare Advantage plans.  If Kaiser is correct that Jet Rescue's air ambulance services would have been covered under original Medicare, then Kaiser has not failed to carry out its obligations under the plans.  It may be that Kaiser's advertisements led enrollees to erroneously believe that international air ambulance services would not be covered unless they paid an additional premium.  But reaching that conclusion would require a determination that Kaiser's view of coverage is correct in the first place.  If, on the other hand, Jet Rescue is correct that the services were covered only as supplemental benefits, Kaiser will ultimately be required to pay for those services without regard to any Medicare-approved reimbursement rates.  In that scenario, Kaiser's advertising regarding optional supplemental benefits would not be false, but its failure to pay those benefits in full would be a violation of its obligations under the plans.  Jet Rescue's UCL claim thus amounts to a "creatively disguised" claim to recover benefits under Kaiser's Medicare Advantage plans. *Id.* at 1143.

We hold that all of Jet Rescue's claims are inextricably intertwined with claims for benefits under Part C of the Medicare Act.  They therefore "arise under" the Act for purposes of the third sentence of § 405(h) and are subject to Part C's mandatory administrative exhaustion requirement.

IV

Jet Rescue contends that even if it was required to exhaust its administrative remedies, that requirement should be excused here.  We have held that the exhaustion requirement may be excused if three conditions are satisfied:

(1) the plaintiff's claim is wholly collateral to a claim for Medicare benefits; (2) the plaintiff has made a colorable showing of irreparable harm; and (3) exhaustion would be futile. *See Johnson v. Shalala*, 2 F.3d 918, 921 (9th Cir. 1993). Jet Rescue has not met the first and third requirements, so we need not decide whether it could meet the second.

As to the first requirement, a claim is deemed "collateral" in this context when it "is not bound up with the merits so closely that the court's decision would constitute interference with agency process." *Id.* at 922 (internal quotation marks and brackets omitted). In this case, the issue of proper payment for Jet Rescue's services is the subject of an organization determination that is final unless and until it is reviewed by the agency. *See* 42 C.F.R. § 422.576. Excusing exhaustion of administrative remedies would interfere with the agency's opportunity to review those claims. As to the third requirement, because administrative review would serve the purposes of exhaustion by allowing the agency to apply its expertise and assemble the relevant record, such review would not be futile. *See Kaiser v. Blue Cross of California*, 347 F.3d 1107, 1115 (9th Cir. 2003).

\*       \*       \*

Because Jet Rescue failed to exhaust its administrative remedies and has not shown any basis for excusing that

requirement, the district court properly dismissed Jet Rescue's action for lack of subject matter jurisdiction.[6]

**AFFIRMED.**

---

[6] Ordinarily, when a district court concludes that it lacks subject matter jurisdiction over an action removed to federal court, the appropriate remedy is to remand the case to state court. *See* 28 U.S.C. § 1447(c). A narrow "futility" exception to this general rule permits the district court to dismiss an action rather than remand it if there is "absolute certainty" that the state court would dismiss the action following remand. *Polo v. Innoventions International, LLC*, 833 F.3d 1193, 1197–98 (9th Cir. 2016). That exception applies here because "the federal law that deprives the federal court of jurisdiction also deprives the state court of jurisdiction." *Porch-Clark v. Engelhart*, 930 F. Supp. 2d 928, 938 (N.D. Ill. 2013). A state court would be compelled to dismiss this action following remand both because Jet Rescue must first exhaust its administrative remedies and because any ensuing judicial action would have to be brought in federal district court. *See* 42 U.S.C. § 405(g).