*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNIVERSITY NEUROSURGICAL ASSOCIATES, PC, doing business as MICHIGAN HEAD & SPINE INSTITUTE, and JOSEPH SEGUNA,

Plaintiffs-Appellants

v

AUTO CLUB INSURANCE ASSOCIATION, MEMBERSELECT INSURANCE COMPANY, and AUTO CLUB GROUP INSURANCE COMPANY,

Defendants-Appellees.

FOR PUBLICATION
September 21, 2023
9:15 a.m.

No. 364322
Oakland Circuit Court
LC No. 2022-191919-NF

Before: LETICA, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Plaintiff University Neurological Associates appeals as of right the trial court's final order granting defendants' motion for summary disposition. The court held that Joseph Seguna was a "qualified person" within the meaning of MCL 500.3107d, as the Medicare Advantage Plan was "qualified health coverage" within the meaning of MCL 500.3107d, and that Seguna had waived allowable "Personal Injury Protection (PIP)" coverage benefits in exchange for a reduced premium. We affirm.

## I. STATEMENT OF FACTS

Before the occurrence of the motor vehicle accident that this first-party PIP provider claim arose from, Seguna signed defendants' automobile insurance application. Defendants' application, compliant with MCL 500.3107d, identified and described the levels of allowable expense PIP coverage Seguna could select as part of his coverage. Seguna elected not to maintain allowable expense PIP coverage and opted out for a reduced premium. Seguna certified on the application that his Medicare Insurance card covered him under Medicare Parts A and B.

The claim arose from injuries sustained in a motor vehicle accident where Seguna lost control of his vehicle and drove off the roadway and into a ditch. Seguna underwent spinal fusion surgery performed by a physician employed by Michigan Head & Spine Institute. As noted, at the

time of the accident, Seguna had a policy of no-fault insurance issued by defendants, and was covered by a Medicare Advantage Plan through BlueCross BlueShield.

Plaintiff[1] filed suit seeking to recover the benefits Seguna was allegedly due. Defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (C)(10), arguing that they had no liability to reimburse Seguna's PIP medical expenses because he had opted out of the coverage. In response, plaintiff argued that Seguna did not effectively opt out of the coverage because his health coverage was under Medicare Part C. The trial court denied defendants' motion, concluding that although Seguna appeared to be a qualified person who could opt out because of the coverage he had, defendant did not provide sufficient evidence that Seguna's Medicare Advantage Plan had a deductible lower than $6,000, as required under MCL 500.3107d(7)(b)(*i*)(B), that would render Seguna a "qualified person" within MCL 500.3107d.

Defendants filed a motion for reconsideration, arguing that the trial court committed palpable error because there was no statutory requirement for them to prove that Seguna had a deductible under $6,000. The trial court granted defendants' motion for reconsideration, finding that it had misread MCL 500.3107d(7)(b)(*i*)(B), that Seguna had coverage under Medicare Parts A and B, and that he waived PIP allowable expenses in compliance with MCL 500.3107d.

## II. MCL 500.3107d

Plaintiff argues that the trial court erred when it determined that Seguna's Medicare Part C coverage met the statutory definition of "qualified health coverage," and that Seguna effectively elected to opt out of PIP medical coverage. Specifically, plaintiff argues that while MCL 500.3107d unambiguously identifies Parts A and B of the Medicare program, the statute does not mention Medicare Part C as meeting the statutory definition of qualified health coverage. Because the Medicare Advantage Plan through Blue Cross was under Part C, plaintiff argues that Seguna was not a qualified person who was eligible to opt out.

In general, an issue is not properly preserved if it was not raised before, addressed by, or decided by the trial court. See *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386-387; 803 NW2d 698 (2010). "[T]he purpose of the appellate preservation requirements is to induce litigants to do what they can in the trial court to prevent error and eliminate its prejudice, or to create a record of the error and its prejudice." *Local Emergency Fin Assistance Loan Bd v Blackwell*, 299 Mich App 727, 737; 832 NW2d 401 (2013) (quotation marks and citation omitted). Plaintiff extensively argued in response to defendants' motion for summary disposition that Seguna did not effectively opt out of PIP coverage. See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 228; 964 NW2d 809 (2020). This issue is preserved.

Statutory interpretation is a question of law that is reviewed de novo by this Court. *Bush v Shabahang*, 484 Mich 156, 164; 772 NW2d 272 (2009). This Court also reviews de novo a trial court's decision whether to grant a motion for summary disposition, *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009), meaning we

---

[1] Seguna is not a party to this appeal, and University Neurosurgical Associates, PC is the only plaintiff pursuing this appeal.

review a motion for summary disposition on appeal in the same way that the trial court was obligated to review it, see *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018) (quotation marks and citation omitted). Thus, this Court assumes the role of determining whether the motion should have been granted on the merits. See *Morales v Auto-Owners Ins Co*, 458 Mich 288, 294; 582 NW2d 776 (1998).

Michigan's no-fault act, MCL 500.3101, *et seq*., requires automobile insurers to provide PIP benefits for certain injuries related to a motor vehicle. *Kemp v Farm Bureau Gen Ins Co of Mich*, 500 Mich 245, 252; 901 NW2d 534 (2017). The no-fault system was designed to provide victims of motor vehicle accidents adequate and quick reimbursement for certain economic losses. *Meemic Ins Co v Fortson*, 506 Mich 287, 297; 954 NW2d 115 (2020). Under this system, insurance benefits for injuries sustained by victims of motor vehicle accidents are a substitute for remedy in tort. *Shavers v Attorney General*, 402 Mich 554, 578-579; 267 NW2d 72 (1978). Under MCL 500.3112, a healthcare provider "may make a claim and assert a direct cause of action against an insurer . . . to recover overdue [PIP] benefits payable for charges for products, services, or accommodations provided to an injured person."

## A. STATUTORY INTERPRETATION

Plaintiff contends that coverage under Medicare Part C, also known as Medicare Advantage, does not meet the statutory definition of "qualified health coverage" under MCL 500.3107d(7)(b)(*ii*). On that basis, plaintiff contends that Seguna was not a "qualified person" who could effectively opt out of PIP medical coverage.

If a statute's language is clear and unambiguous, it is presumed that the Legislature intended that its plain meaning be enforced as written. *Ahmed v Tokio Marine America Ins Co*, 337 Mich App 1, 8; 972 NW2d 860 (2021). If the plain and ordinary meaning of the language is clear, judicial construction is neither necessary nor permitted. *Pace v Edel-Harrelson*, 499 Mich 1, 7; 878 NW2d 784 (2016).

A central tenet of Michigan's no-fault act is that "persons, not motor vehicles, are insured against loss." *Lee v Detroit Auto Inter-Ins Exch*, 412 Mich 505, 509; 315 NW2d 413 (1982). "PIP benefits are mandated by statute under the no-fault act, and, therefore, the statute is the 'rule book' for deciding" issues of awarding benefits. *Rohlman v Hawkeye-Security Ins Co,* 442 Mich 520, 524-525; 502 NW2d 310 (1993) (citations omitted). Under MCL 500.3107(1)(a), PIP benefits are payable for "allowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107d reads in part:

> (1) For an insurance policy that provides the security required under section 3101(1) and is issued or renewed after July 1, 2020, the applicant or named insured may, in a way required under section 3107e and on a form approved by the director, elect to not maintain coverage for personal protection insurance benefits payable under section 3107(1)(a) if the applicant or named insured is a qualified person,

and if the applicant's or named insured's spouse and any relative of either that resides in the same household have qualified health coverage or have coverage for benefits payable under section 3107(1)(a) from an insurer that provides the security required by section 3101(1).

(2) An applicant or named insured shall, when requesting issuance or renewal of a policy under subsection (1), provide to the insurer a document from the person that provides the qualified health coverage stating the names of all persons covered under the qualified health coverage.

\* \* \*

(4) If an insurance policy is issued or renewed as described in subsection (1) and the applicant or named insured has not made an effective election under subsection (1), the policy is considered to provide personal protection benefits under section 3107c(1)(d).

\* \* \*

(7) As used in this section:

\* \* \*

(b) "Qualified health coverage" means either of the following:

(*i*) Other health or accident coverage to which both of the following apply:

(A) The coverage does not exclude or limit coverage for injuries related to motor vehicle accidents.

(B) Any annual deductible for the coverage is $6,000.00 or less per individual. The director shall adjust the amount in this sub-subparagraph on July 1 of each year by the percentage change in the medical component of the Consumer Price Index for the preceding calendar year. However, the director shall not make the adjustment unless the adjustment, or the total of the adjustment and previous unadded adjustments, is $500.00 or more.

(*ii*) Coverage under parts A and B of the federal Medicare program established under subchapter XVIII of the social security act, 42 USC 1395 to 1395*lll*.

(c) "Qualified person" means a person who has qualified health coverage under subdivision (b)(*ii*).

The provisions of MCL 500.3107d unambiguously provide an ". . . option to opt out" if the insured is a qualified person with qualified healthcare coverage. Subsection (7) defines "qualified health coverage" and "qualified person." Additionally, subsection (7)(b)(*i*), indicates that

qualified health coverage under the statute cannot exclude injuries related to motor vehicle accidents or have an annual deductible over $6,000.

## B. APPLICATION

The trial court did not err in concluding that Seguna was a qualified person under MCL 500.3107d, and that he effectively opted out of PIP coverage benefits to reduce his premium payments. As noted, MCL 500.3107d(1) allows an insured to "elect to not maintain coverage" for PIP benefits if the applicant is a "qualified person." A "qualified person" is one who "has qualified health coverage under subdivision (b)(*ii*)." MCL 500.3107d(7)(c). "Qualified health coverage," in turn, is defined as "[c]overage under parts A and B of the federal Medicare program . . . ." MCL 500.3107d(7)(b)(*ii*). Contrary to plaintiff's interpretation of MCL 500.3107d, a Medicare Advantage Plan obtained under Part C of Medicare is qualified health coverage under the statute since Medicare Advantage Plans provide coverage for services required under Medicare Parts A and B, albeit through a private health insurance company.

In 1997, Congress created Medicare Part C or the Medicare Advantage program, which created Medicare Advantage Organizations (MAOs)—private insurance companies that provide Medicare benefits. *MSPA Claims 1, LLC v Kingsway Amigo Ins Co*, 950 F3d 764, 767-768 (CA 11, 2020). Under the Medicare statute, an MAO is required to provide the benefits covered under Parts A and B. *In re Avandia Mktg, Sales Practices & Prod Liability Litigation*, 685 F3d 353, 357-358 (CA 3, 2012) ("Part C allows Medicare enrollees to obtain their Medicare benefits through private insurers (MAOs) instead of receiving direct benefits from the government under Parts A and B. . . . The MAO is required to provide the benefits covered under Parts A and B to enrollees . . . ."); *Tenet Healthsystem GB, Inc v Care Improvement Plus South Central Ins Co*, 875 F3d 584, 586 (CA 11, 2017) ("Under Medicare Part C, MAOs provide the same benefits that an enrollee would receive through the traditional, government-administered, fee-for-service programs under Medicare Parts A and B, as well as additional benefits."); *Global Rescue Jets, LLC v Kaiser Foundation Health Plan, Inc*, 30 F4th 905, 909 (CA 9, 2022) ("Medicare Advantage plans must provide benefits for services covered under Parts A and B . . . ."); *Snyder v Prompt Med Transp, Inc*, 131 NE3d 640, 651 (Ind App, 2019) ("Under Part C, Medicare beneficiaries may sign up for a privately administered healthcare plan (originally called a 'Medicare + Choice' plan but later renamed a 'Medicare Advantage' plan), which provides all of the benefits included in Parts A and B as well as additional benefits."). In other words, a person like Seguna who is enrolled under Part C receives the benefits that are required under Parts A and B, but just not directly from the government (as would one who elected to receive those benefits through Parts A and B).

It is true, as plaintiff argues, that Parts A, B, and C are separate statutory parts, and that the benefits available under both Parts A and B are paid for by the government, while Part C benefits are paid for by an MAO. And, it is equally true that Seguna did not elect to receive benefits directly from the government under either Part A or B, instead choosing to receive those benefits under Part C through Blue Cross. But, as defendants argue, the dispositive question is not whether Seguna *elected* to receive benefits under Parts A and B (and have them paid by the government), but whether he was *receiving* the benefits provided "under" Parts A and B of the Medicare statute. MCL 500.3107d(7)(b)(*ii*). And, as the Pennsylvania Supreme Court recognized in *Commonwealth ex rel Kane v UPMC*, 634 Pa 97, 140; 129 A3d 441 (2015), "in the view of the federal government, if an individual is enrolled in [a] Medicare Advantage program, that individual is still considered

to be in the federal Medicare program. As such, a person who is enrolled in Medicare Advantage receives their Medicare Part A and B benefits through the Medicare Advantage program."

When Seguna filled out the waiver form, he provided proof that he had a Medicare Advantage Plan, which qualified as health coverage, because Seguna's plan provided him with coverage for the benefits required under Medicare Parts A and B, albeit through a private health insurance company under Part C. Thus, Seguna effectively opted out as permitted under MCL 500.3107d.[2]

The trial court did not err when it granted defendants' motion for summary disposition.

Affirmed.

/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel

---

[2] Plaintiff relies on the doctrine of "*expression unius est exlusio alterius*" to argue that because MCL 500.3107d does not mention Medicare Advantage Plans (issued by Part C), plans issued under Part C should not fall within the opt out provisions of the statute. See *Bronner v Detroit*, 507 Mich 158, 173 n 11; 968 NW2d 310 (2021), citing *Detroit v Redford Twp*, 253 Mich 453, 456; 235 NW 217 (1931). However, the doctrine is inapplicable because judicial construction in the present case is precluded since the statute is unambiguous.